REC'D JAN 0 9 2024

**IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER,** Plaintiff | : : : : : : | |
| v. | : : | **Case No: 23-3999-GJP** |
| **Ronald Lee** *et al,* Defendants | : : : : : | |

## <u>PLAINTIFF'S RESPONSE TO DEFDANTS' BARITZ, LEE, LEE, AND REVOCABLE TRUST'S MOTION TO DISMISS AMENDED COMPLAINT</u>

Gordon Roy Parker ("Gordon"), Plaintiff in the above-styled action, submits his Response to the instant motion to dismiss.

## <u>BACKGROUND</u>

This case is very simple: a racist ***slumlord,*** in a neighborhood where people who share Defendants' ethnicity consider it their ***turf***, while attempting to preserve its legacy of substandard housing (two fires and a building collapse in the past few years in the area), rodent-infested retail establishment, garbage-laden streets, is using a formerly disbarred attorney with a history of breaking the law via malicious and extortive eviction filings, in this case with the goal of silencing Plaintiff by making him homeless.

## <u>RESPONSE TO MOVING DEFENDANTS AVERMENTS</u>

Defendants incorrectly assert that Plaintiff would file endless Amended Complaints unless forced to answer this motion, yet the FRCP does not allow this.

1. ***Denied In Part***.  Plaintiff admits to having commenced the above-referenced lawsuit, but denies the disparaging characterizations which are par for the course from his adversaries, and which indicate the retaliatory animus.

2. ***Denied In Part***.  Plaintiff admits that a motion to dismiss and motion to strike were filed, but denies any characterization of the motion or action by Defendants.

3. ***Denied.***  The only depraved conduct is that of Defendants slumlords who are seeking to illegally evict two disabled adults in their late-fifties, one of whom is terminally ill and not expected to live more than a few years:

    a.    Plaintiff is not litigating the claims of third parties, as he purchased the FDCPA and fraud claims from his brother, and has standing himself to file suit, since these claims directly impact Plaintiff's ***implied lease*** for the premises ("the Apartment")

    b.    The "conspiracy theory" outlined by Plaintiff not only must be taken as true at this stage of litigation, but ***is*** true, as the preponderance of evidence will show at trial. The claim, that a group of powerful people are ***conspiring*** to harm a whistleblower, is hardly depraved or even irregular: Plaintiff is a huge threat to lawbreakers, including Defendants.

    c.    The website fictionalized here for now as ***harassthem.com*** represents two real-life websites which exist for the explicit purpose of driving mentally ill and vulnerable "crazies" to suicide, and which have been covered by national network news for behavior consistent with this purpose, particularly against transexuals or the autistic.[1]

---

[1] Defendant is baiting Plaintiff in an attempt to get him to name this sites in order to give them pretext to enter the fray and resume their harassment.  Each "doxing" website has a long history of cyberterrorism against Plaintiff, with their libel often quoted by UPenn's lawyers in cases involving them, and in the eviction case in which Baritz was co-counsel.  Defendants fear discovery that would reveal this conduct and have instead gone "all in" against Plaintiff.

4.   ***Denied as Conclusory***.  While this is a conclusory allegation which requires no response, and while diversity jurisdiction would apply to the out-of-state defendants, this case is based primarily on federal-question jurisdiction raised by the FDCPA and Fair Housing Act.

5.   ***Denied as Conclusory***.  By way of further answer, Plaintiff moved to disqualify Barsky due to an unwaivable conflict of interest.  No response to the motion was filed, which would seem to make it unchallenged.

6-7.   ***Denied as Conclusory***.  The very case cited by Defendants, seems to favor Plaintiff, who has standing on his own regardless of how this issue adjudicates:

> Such a right does not seem to us to be a property right, capable of assignment, prior to liquidation; but similar rather to an action for malicious prosecution, or for the abuse of legal process, which actions are not assignable.

8.   ***Denied in Part***.  The Amended Complaint rendered any opposition to the motion to dismiss moot, making a response unnecessary, as any experienced federal litigator knows.

9.   ***Denied as Conclusory***.  No such averments containing the alleged "direct personal attacks" are provided, though noting that Defendant Baritz was ***disbarred*** in 1984, and sued twenty years ago for similar conduct alleged here, is hardly personal, and is highly relevant.

10.   ***Denied as Conclusory***.  The Amended Complaint speaks for itself.

11.   ***Admitted in Part***.  The abuse of process claim was removed, with Plaintiff intending to replace this with a Dragonetti claim.[2]

12.   ***Admitted in Part***.  As above, Plaintiff omitted the claim for invasion of privacy, though he showed intent to add it.  This is repairable on amendment, and of course Plaintiff

---

[2] Plaintiff, who is terminally ill with three separate conditions (type II Diabetes, ESLD, and stage 3 COPD), is not as capable as he used to be, and forgot to add the Dragonetti claim, though this is repairable on Amendment, and could be refiled in the event Defendants ever get around to initiating another eviction proceeding.  The facts clearly support this and the FDCPA claim.

3

could simply withdraw this case and refile it, were he as characterized by Defendants.  The facts support this claim, and are also relevant to the discrimination and retaliation claim.

13-14.  ***Denied as Conclusory***.  By way of further answer, Plaintiff's new claims are legitimate, more precise and concise, and are raised in order to expedite resolution of this issue, rather than dragging things out in state and municipal court, in two separate cases (plenary and possessory), a likely unconstitutional framework, the former of which would survive eviction.

15.  ***Denied as Conclusory***.  Defendants have not provided any Rule 11 notice.[3]

16.  ***Denied as Conclusory***.  Only the Amended Complaint requires a response.

### Statement Of Facts as Pled

17.  ***Denied***.  Plaintiff's claims stem from his own occupancy of both apartment BR2 ("the Basement"), and their new apartment on a higher floor ("the Apartment").

18-19.   ***Denied***.  The original complaint consists of timely allegations for which the motivation extends to conduct dating as far back as 1996.  The only allegations are against the Defendants.  The backstory merely explains the motive.  All of the other individuals named have a history of interfering with Plaintiff's housing via stalking or enabling.  Warren Buffet merely owns the company that rented the property to Walt in 2016.   The amended complaint is similar.

19.  ***Denied as Conclusory***.  Defendants mischaracterize Plaintiff's litigation history, as well as the purpose of this litigation, which is to prevent delays and enable resolution.[4]

---

[3] Unless the Fair Housing Act was repealed, the retaliation and discrimination claims are not only legitimate, but ongoing, due to Defendants' continued fixation on litigating against Plaintiff (*they* started this, not Plaintiff), which has taken priority over bringing the Building up to code, and which has underlying issues which will be delayed in adjudication in state or municipal court.  Once again, Plaintiff is perfectly fine with the status quo, and unless Defendants plan to let him live out his days rent-free, they should welcome this litigation, a clear invitation to them to attempt to take possession far more efficiently.

[4] This averment exemplifies why Defendants have ignored Plaintiff's rights and attempt illegal evictions against him, for which he could file suit in municipal court, but hasn't.  Moreover, he has not filed a *pro se* case since 2017, and did file one in 2019 with a San Diego attorney who was willing to sue Defendants *pro bono* as a favor, something a "serial litigant" would have done in an instant.

20.  ***Denied as conclusory***.  Defendants seem annoyed that Plaintiff knows how to defend his rights.  He has no more control over the number of Defendants than a target of gangrape.[5]  It should also be noted that Defendants initiated litigation by threatening eviction.

21.  ***Denied as conclusory.***[6] Defendants seem to imply that this averment eliminates Plaintiff's right to fair housing, a mailbox key, garbage disposal, or heat in the wintertime.  The bedroom window cited in the Amended Complaint has since been fixed, at Plaintiff's expense.

22.  ***Denied as conclusory***.[7]  By way of further answer, the absence/dismissal of this case has Plaintiff living rent-free in perpetuity.  He is fine with that; why are Defendants?

23.  ***Denied as conclusory***.[8]

24-26.  ***Denied in part***.  The story is relevant to Plaintiff's treatment by Fairfax (represented by Baritz) and UPenn, including the internet in 2001 with the Wintermute threats.[9]

27.  ***Admitted***.  Defendant is stating the obvious.

---

[5] Plaintiff is a whistleblower whose internet business model was deemed a threat to criminal enterprises, including piracy, ***slumlords*** (like Defendants), and employers like UPenn, who covered for a doctor who drugged and raped a female job applicant.  This is why he is being targeted for eviction, through the disabled brother for whom he has been a lifetime caregiver, and who is about to go from special education to an associates degree in cybersecurity.  He has never had a case declared frivolous, nor been sanctioned, and several of his dismissed cases (such as the argument against affirmative-action) would prevail today.

[6] Parker v. LTSC was based in part on ***death threats*** and defamation of both Plaintiff and his late mother by a UPenn student whose identity the University was covering up, in retaliation for a Title VII case brought by Plaintiff.  One of the ***Defendants*** in that case, Paul Ross (a/k/a Ross Jeffries), blew the whistle on the ***Seduction Syndicate*** in his own blog in 2010, long after this lawsuit was decided.

[7] Not only do so many of Plaintiff's cases survive dispositive motions, some of them, including the case filed by Baritz against Walt, have prevailed!  Plaintiff also has a win over Microsoft and Yahoo!, and his affirmative-action argument against UPenn would prevail today in light of the new precedent.  This is not relevant.

[8] By way of further answer, Forty years would date back to 1983, not 1998, when Plaintiff filed his first case, a bankruptcy.  Plaintiff has not filed a ***pro se*** case since 2017, had a San Diego-based lawyer (Michele M. Betti) ready to file this one in 2021 in San Diego and declined.  He has prevailed in other cases, been praised for being "on-point" (Parker v. Yahoo! hearing in 2009), and his affirmative-action arguments against UPenn would prevail today.

[9] The Amended Complaint is more concise, and can be expounded upon at trial.  The Fairfax (represented by Defendant Baritz) and UPenn made this very life story central to the eviction and wage lawsuits from 2016.  As Plaintiff has written three separate autobiographies in the voices of a dating expert, gambler, and chessplayer, his life story is literally an "open book."  Nonetheless, that story can easily be spun or misrepresented while irrelevant to things like housing lawsuits, other than to reveal that landlords are internet-snooping not just Plaintiff, but other tenants, including vulnerable females.

28.  ***Denied as Conclusory***.  Defendant Baritz opened the door to litigation history in the Motion to Dismiss, and seems to have buyer's remorse over his prior bad acts revealed.

29-30.  ***Denied as Conclusory***.  By way of further answer, public records are not defamatory, and Defendant Baritz – whose firm is representing his co-defendants -- opened the can of worms regarding litigation history.[10]

31-32.  ***Admitted in Part***.  In 2017, the Fairfax sued Plaintiff and Walt for eviction:

    a.  The thirty-day notice to vacate was served concurrent with the lawsuit.[11]

    b.  Walt was also named in the lawsuit, and then dismissed as a defendant when Plaintiff, as his advocated, introduced the lease for the Basement (which Baritz has had all this time) as an exhibit.  The only "success" for Fairfax was tagging Walt with a ***Scarlet E***.

    c.  The judgment for possession was ***zero dollars***, and Fairfax sought no back rent on appeal.  Plaintiff had argued that unpaid overtime dating to 1998 (wage theft) meant that the rent on the apartment had been prepaid through 2037.  Defendant gained possession by ending the less at will, not due to anything for which they had sued.

33.  ***Admitted***.  Defendants have so eloquently outlined the basis for the retaliation and fraud claims: through the "***harassthem.com***" websites, which UPenn has liberally quoted in litigation dating back to 2003, a coordinated attempt to drive Plaintiff to suicide, in part by making him homeless, has continued to this day, with the illegal eviction attempts continuing to this day, including but not limited to ***no heat, no garbage dumpster, and no mailbox key***.

---

[10] With regard to how highly regarded Defendant Baritz is within the legal community, this is ***argument ad hominem*** and ***argument ad populum*** at best, and at worst, extremely comical.

[11] The timing of the notice rendered it moot, as Plaintiff and his brother were already stigmatized by the eviction lawsuit, in a legal climate far harsher for the *Scarlett E* than exists now.  This was in violation of the Landlord Tenant Act of 1951, and/or other statutes, which require this notice.  The municipal court gave the Fairfax a pass on this, despite the statute, and the irreparable harm inflicted on Plaintiff, who was tagged with an eviction lawsuit without the opportunity to vacate.

34-35.   **_Admitted in Part_**.  Defendant Baritz was co-counsel in the case where UPenn quoted Plaintiff's internet stalkers – one of whom (Lindsey E. Middlecamp) is an AUSA and UPenn Law Graduate), with high-level influence across social media.  Middlecamp had threatened Plaintiff by e-mail, defamed him publicly, and declared an intent to interfere in his lawsuits.[12]  Plaintiff will have zero difficulty proving this.

36.   **_Denied in Part_**.  Walt moved into the Basement on November 15, 2016, **_nine months_** prior to the eviction lawsuit.  Despite being put on notice of this, Baritz named Walt anyway, on behalf of the Fairfax, dismissing him only after this lease entered into evidence.  Plaintiff remained in the Fairfax, where as late as May, 2017, as part of an offer to settle a wage lawsuit, he and Walt were offered a chance to remain in the Fairfax.

37-39.   **_Denied as Moot_**.  No copy of the deed was included as an exhibit, though even if true, it is moot, as the Trust is a pierceable corporate veil for the named Defendants.  The old lease was replaced by the new lease on the Apartment, after relocation from the Basement.  By way of further answer, attached as Exhibit A and incorporate by reference is a copy of the rent check of February 2021, the last of many **_checks made out to Defendant Ronald Lee._**

40-41.   **_Admitted in Part_**.  They are mutual caregivers, saving the taxpayers a fortune, while Defendants are slumlords, costing the taxpayers a fortune and endangering the lives of tenants.  The "stray cat" relationship ended with the COVID pandemic, and ended when Plaintiff notified Defendants of his presence on June 3, 2023, after which he became an occupant.

42-43.   **_Admitted in Part and Moot_**.  The Original complaint is no longer relevant, while the Amended Complaint speaks for itself.

---

[12] The association and coordination with the cyberterrorists was baldfaced and open: Defendants were relying on Plaintiff's priority of protecting his brother's privacy as insurance that this action would never be filed to call them out.

44. _**Admitted**_. This is the basis for the breach of contract claim, for which Plaintiff has standing as an occupant, as it relates to possession and alleged back rent, or offsets.[13]

45-47. _**Admitted in Part**_. The Amended Complaint speaks for itself, while the true relationship of nonmoving Defendants Mai and Caanan to the other Defendants and the Building cannot be ascertained, beyond Plaintiff's direct knowledge.

48. _**Admitted in Part**_. The notice of moving at the end of July was sent by e-mail in February, 2022 from _**Walt**_ to the landlord.[14]

49-51. _**Admitted**_. The Amended Complaint speaks for itself. _**This**_ is the key period: _**something**_ changed between February and June, 2022 that caused Defendants to seek eviction of Plaintiff and his brother. Plaintiff handled the phone call as Walt's advocate.[15] The Notice to Vacate in both June, 2022, and August, 2023 were fatally defective.

52-55. _**Admitted**_. The Amended Complaint speaks for itself. Plaintiff, already known as an occupant, used the toilet while half-asleep, checked it for well over a minute after flushing, saw no problem, and returned to bed, over a hundred feet away, with Walt still asleep and his phone off. Consequently, they were unaware of the water damage until Walt awakened. The damage was caused by defective plumbing and pipes, not any negligence by Plaintiff (or Walt). Regarding the invasion of privacy claim, Plaintiff can amend the complaint to add the count.

---

[13] Plaintiff proposes an application of the math used in 29 USC 203(m) regarding cost of providing housing to an employee to substandard housing, in that rent should be limited to the actual cost of the housing, in this case resulting in a substantial offset in controversy.

[14] This is consistent with Plaintiff's TSS-like role to remain in the background. The housekeeper had been harassing him and was pounding on the door, and Plaintiff (part of his caregiving is ensuring housing stability for Walt) advised him to give this notice which, while not ideal, appeared the lesser evil. It also would have resolved any occupancy disputes, as Plaintiff intended to move with his brother, while also giving the landlord a chance for them to move out without litigation, even though they were in good standing.

[15] Whether this case is litigated here, or in state and municipal court, unless Defendants want Plaintiff to live rent-free in perpetuity, they need to explain why, which they have refused to do up to this point, after which they cannot change their story.

56. *Admitted.* Not only did the lease offer (averment #54) violate the Fair Housing Act, Defendants attempted to exploit Walt's disability by "cornering" him into signing it, while Plaintiff was experiencing ESLD-related hyperthermia (related to the lack of heat in the apartment, and stress) and literally *shaking*. But for Plaintiff being in the apartment, Walt would have been tricked or coerced.[16]

57. *Denied in part.* The actions are not far-fetched.[17] [18]

58. *Denied.* The PCHR *hearing* was for a complaint from June, 2022.[19]

59. *Admitted.* The notice to vacate was never personally served, was in violation of the order at the time, was rejected by the Eviction Diversion Program, and was moot because it did not seek to obtain possession from Plaintiff, or even "all occupants," denying due process. No new notice has been issued since October, 2023, despite the lack of barriers.

60. *Admitted.* The Amended Complaint speaks for itself. Plaintiff's position is that the purchased claims are not personal, but for property/debt, in quantifiable amounts, and are akin to a debt collector purchasing an unliquidated claim. Alternatively, he has standing on his own, though it appears Defendants have released him from this obligation.

---

[16] Plaintiff's primary role as Walt's caregiver has been to prepare him for independent living after Plaintiff dies. Walt needs relatively little assistance, and even a fully abled person can be coerced by an attorney, particularly in a situation like this. Plaintiff, an experienced paralegal, functioned as *garlic* to the landlord vampires. Though not argued here, Plaintiff should be found to have standing as Walt's *next friend* under Federal Rule 17, as should any caregiver for someone with his condition. While Walt can function and recite language, defending his rights as a *pro-se* is literally impossible.

[17] If Defendants want this case dismissed, the clock restarted, and so much time to pass that the outcome will be rendered moot likely due to his death, it is more than acceptable to Plaintiff to move them to state or municipal court, while he continues to live rent free. This lawsuit is for *their* convenience, not his.

[18] The blatant, anti-white racism in Chinatown has been *celebrated* both in the streets and the media as a noble effort to preserve the neighborhoods slums (two of which have burned down in the past few years), rodent-infested retail establishments (including *Tea Do*, who occupies the ground floor of the Building, and whose operation certainly hasn't helped the plumbing), and well-known brothels, against a serenade of loud garbage trucks during the overnight, noise ordinances be damned.

[19] At this hearing, Plaintiff and Walt were ordered to not pay rent; they did not appeal, but Defendants did, and won, clearing the way for them to initiate new proceedings on October 12, 2023, yet have declined to do so, allowing the brothers to live rent-free in perpetuity, and have also declined the opportunity to expedite the process by litigating these issues here.

61.   *__Admitted.__*   This is the basis for the FDCPA claims, for which Plaintiff has standing to litigate, since the Notice and stated amount owed impact his possession of the apartment, and because he is the one who overflowed the toilet.  A controversy exists.

62-63.   *__Admitted in Part__*.   Plaintiff's complaint with the PCHR was "ghosted," and ignored, while Walt's complaint was dismissed by default on November 21, 2023.  As Walt's advocate, Plaintiff should have been noticed for the hearing, while Walt was served only by e-mail.  Moreover, the Notice was fatally defective.  Despite this supposed victory, Defendants have not proceeded further.

64.   *__Denied.__*   The *__cyberstalking__* that began with UPenn and Wintermute in 2001 is hardly unrelated to this litigation, and is highly relevant to the Fair Housing retaliation claim.

65-68.   *__Denied in Part__*.   Defendant recites the Amended Complaint, though the Abuse of Process Claim was removed in error.  Nevertheless, the claim can be litigated in municipal or state court if dismissed here, or refiled without prejudice, for even more rent-free delay.

69-71.   *__Admitted__*.   The Amended Complaint speaks for itself.

72-73.   *__Denied as Conclusory__*.   Additionally, Defendant Baritz's conduct is no more within the scope of immunity than any corrupt state actor.  Plaintiff should prevail on this claim.



74.   *__Admitted__*.   The Amended Complaint speaks for itself.

75.   *__Denied as Conclusory__*.   By way of further answer: *__is too__*!  (See Memorandum)

76-79.   *__Denied in Part as Conclusory__*.   By way of further answer, the overturned ruling does not change the implied lease, and related to the housing code violations.  The *__rent-free__* Plaintiff is still an occupant of the Apartment, with possession that must be retaken in court.

79-83.   ***Denied in Part as Conclusory***.  By way of further answer, Plaintiff has contractual proclivity as an occupant, as well as an injured party.  The purchase of Walt's similar claims is superfluous, and rooted in a property dispute (loss of property due to fraud).  Regardless, Plaintiff can represent his brother in Municipal Court, and continue to live ***rent-free*** in the Apartment until such time as Defendants get around to initiating the proceedings they have threatened (another violation of the FDCPA).

84-85.   ***Denied as Conclusory***.  By way of further answer, the text was part of an ongoing text and verbal exchange to "work it out," further evidenced by the lack of acceptance of the offer to vacate in July, 2022.  Any reasonable mind ***would*** consider the issue resolved.

86.   ***Admitted.***  This is correct: the formerly disbarred Defendant Baritz, acting primarily on behalf of the University of Pennsylvania, has yet ***again*** engaged in illegal conduct (violation of the PCHR order) to attempt to make Plaintiff homeless, in the hope he will either die on the street or commit suicide, and is doing so in concert with the ***harassthem.com*** websites, in order to silence his internet presence and whistleblowing.  This is also in clear violation of RICO and cyberstalking, as well as hate-crime laws.  Plaintiff can ***easily*** prove this at trial, since Defendants were sure that their ***extortion*** threat to dox Walt would ensure that this case was never filed.  ***They presumed wrong.***

87.   ***Admitted.***  This claim, for retaliation under the Fair Housing Act, most certainly gives Plaintiff standing, regardless of his standing as a tenant or occupant, as he is the true target.

88.   ***Admitted.***  Chinatown is more racist towards whites than Forsyth, Georgia was towards Bl – er, ***African Americans*** – in its heyday, to the point of marches and protests to "preserve the neighborhood."  Additionally, the terms of the lease renewal were unfavorable to

what was offered to non-Americans, and it is safe to assume that neither Plaintiff nor his brother would have been permitted to trespass in an Asian-American neighbor's apartment.

89.   ***Denied as Conclusory.***   Defendants have once again parroted the doxing websites libel of Plaintiff, and revealed their true motive.[20]   This is yet another extension of the retaliatory feminist narrative developed by AUSA Middlecamp for UPenn.

90-91.   ***Admitted***.   The Amended Complaint speaks for itself.  By way of further answer, issues of standing, tenancy, occupancy, damages, and the nature of the alleged debt, are all issues demanding timely resolution so that Plaintiff and his brother may go on with their productive lives as something other than a Chinatown slumlord doing its part to preserve the racist character of the decrepit neighborhood in which they provide substandard housing to vulnerable tenants. Plaintiff will continue to enjoy his ***rent-free*** existence until such time as Defendants attempt to regain possession.

92.   ***Admitted.***   Illegal evictions are no laughing matter, as homelessness is considered a serious threat to life, liberty, and the pursuit of happiness, all of which are constitutional rights, hence the amount.[21]

93.   ***Denied As Conclusory.***   Defendants' attempts at mindreading fail: Plaintiff has several legitimate federal claims, some of which would survive eviction, and which are best and

---

[20] While Plaintiff is an anti-feminist who some may consider misogynistic, he would certainly warn any attractive, female Asians who rent from him that three fully operational ***brothels*** (none of which Plaintiff has ever patronized), are within proximity of the Building, given that they may be mistaken for sex workers who are often trafficked, unless of course the women were already informed of this or did not mind.  One would think that Defendants, half-century fixtures in the neighborhood, would know much more than Plaintiff about the area's underbelly.

[21] Since 1998, UPenn and the Fairfax, in concert with cyberstalkers, cyberterrorists, and a corrupt AUSA, have attempted to destroy Plaintiff's life, first by attacking his employment, then his internet presence, and when that didn't work, his housing, the only vulnerability left for them to attack, but even this attack will ultimately fail, given the sharp increase in tenant's rights, prompted by conduct much like that alleged by Plaintiff, who did not start this conflict, but is certainly not running from it, all the while living rent-free while waiting for the Defendants to "come and get their weapons."  A cat seems to have swiped their tongue.

most timely litigated in this court. Plaintiff is attempting to preempt nothing, and has been

expecting a notice to vacate since October, 2023, yet one has not materialized.

94. ***Denied as Conclusory.*** By way of further answer, landlord-tenant matters, such

as the one involving Defendant Baritz's previous lawsuit, often spill into federal court. The Fair

Housing Act and FDCPA cover much more than landlord-tenant law, making this the more

appropriate venue, since possession is immaterial to these claims.

95-96. ***Denied as Conclusory.*** By way of further answer, the Fair Housing Act claims

alone are sufficient to survive a motion to dismiss. While diversity jurisdiction does apply, it is

also superfluous, due to the existence of federal questions.

97. ***Denied.*** Plaintiff objects – as ***strenuously*** as humanly possible – to Defendants'

minimization of the incredible damage caused by ***homelessness*** to a terminally ill, disabled

individual in his late fifties. The damage claim is proper.

98. ***Denied as Conclusory.*** By way of further answer, Defendants have given as

good as they have gotten. Plaintiff defers to the wisdom of this Court to act as a fair and proper

referee. It was certainly not his intent to cross any lines, though he cannot say the same of

Defendants.

99-100. ***Denied as Conclusory***. Defendants have overreacted to Plaintiff's extremely

normal practice of filing an Amended Complaint (which he may do once and only once without

leave), made more precise by the averments and arguments presented in the motion to dismiss,

and would in fact be remiss by not doing so. Once again, Plaintiff has filed this case to allow

Defendants an expedited path to their stated objective of regaining possession, and resolution –

which will take literally ***forever*** in the broken Commonwealth state court system, which likely

denies due process – yet they have declined, likely in part to the pesky retaliation claim, which

13

belongs here, which will survive eviction, and which is far less likely to be settled by Plaintiff if he is forced to relocate himself and his brother to new housing, while fighting off three terminal illnesses.  Unlike Defendant, Plaintiff does not presume to be a mindreader.

WHEREFORE, the instant motion should be **denied**, and Plaintiff would appreciate being sent copies of pleadings and correspondence to his e-mail, given that he has no mailbox key and must get mail through the Broad Street Ministry.  An appropriate form of order is attached. This the 9th day of January, 2024.

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131

**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| Plaintiff | : | |
| v. | : | **Case No: 23-3999-GJP** |
| **Ronald Lee *et al,*** | : | |
| Defendants | : | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S RESPONSE TO DEFDANTS' BARITZ, LEE, LEE,**
**AND REVOCABLE TRUST'S MOTION TO DISMISS AMENDED COMPLAINT**

Gordon Roy Parker ("Gordon"), Plaintiff in the above-styled action, submits this Memorandum of Law in support of his response to the instant motion.

## BACKGROUND

Plaintiff was never a "serial litigant," beyond his being a ***serial target***, a major "award" for a whistleblower, short of being murdered, which UPenn has not yet had the nerve to attempt, but instead has done so passive-aggressively, since 1998, and particularly since 2001, in retaliation for Plaintiff's protected Title VII activity as a whistleblower. Defendant Baritz, who has taken his extremely naïve and manipulated co-defendants along for a ride on his personal ***highway to hell***, continues this stalking campaign with abuse of the judiciary under color of state law. The §1983 claim is there for the simple reason that it most accurately reflects the truth, a truth Plaintiff will have no difficulty proving at trial.

If Plaintiff is not a legitimate occupant or tenant of the Apartment, what is stopping Defendants from removing him? He sits patiently – ***very patiently*** as it is rent-free – waiting for his landlord to engage, yet despite all their noise, and despite having known of Plaintiff's fulltime occupancy since June, 2022, they have done absolutely nothing to change the status quo. While Plaintiff would rather

have a mailbox key, heat, and not have to lumber on half-dead legs up the stairs to a way-too-large

apartment, he makes do.

Plaintiff is not litigious: he has not filed a *pro se* lawsuit since 2017, and could have put

Defendants out of business in 2020-2021 by unleashing nationally prominent attorney Michele M. Betti

in Defendant Ron Lee's backyard of San Diego, had he so chosen.  He files here for clarity and timely

resolution of serious controversies which span state and federal law, and which are unrelated to

possession.  He is not the one running from a fight commenced by Defendants almost two years ago, and

which may already constitute *laches*.

Plaintiff is terminally ill and concluding his affairs.  Defendants are trying to win literally nothing

through eviction, and by attempting it they are giving rise to the causes of action set forth here.  While

Plaintiff hopes to prevail, all roads here lead to…nothing more than determining when, how, and why

Plaintiff and his brother will eventually move, as well as where they will land.  Had Defendants simply

left Plaintiff and his brother alone, they would likely have wound up leaving sooner.  That moving on

with the *Scarlett E* attached only underscores Defendants' true motive: to destroy Plaintiff to the point

of natural death or suicide.

## **ARGUMENT**

### I.    **The Amended Complaint Should Not Be Dismissed.**

a.    **Standard of law.**  ChatGPT seems to know what it's talking about:

> Rule 12(b)(6) motions to dismiss are typically challenging to succeed because the legal standards
> for evaluating these motions are quite stringent. The court must accept all factual allegations in
> the complaint as true and draw all reasonable inferences in favor of the non-moving party. Here's
> a summary of the key reasons why these motions are rarely granted, along with the appropriate
> citations:
>
> *Liberal Pleading Standards*: The Federal Rules of Civil Procedure require a complaint to
> contain a short and plain statement of the claim, showing that the pleader is entitled to relief
> (Fed. R. Civ. P. 8(a)(2)). This liberal pleading standard does not demand detailed factual
> allegations, nor does it require that pleadings allege all material facts or the exact articulation of

2

the legal theories upon which the case will be based (Donaldson v. Clark, 819 F.2d 1551 (11th Cir. 1987)).

*Plausibility Standard*: To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. This means more than an unadorned accusation; the complaint must offer labels, conclusions, or a formulaic recitation of the elements of a cause of action (Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

*Assumption of Truth*: The court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff (Pielage v. McConnell, 516 F.3d 1282, 1284 (11th Cir. 2008)).

*Challenges in Meeting Standards*: Because the court assumes all factual allegations contained in the complaint to be true and gives the plaintiff the benefit of the doubt, it is difficult for a 12(b)(6) motion to succeed unless the complaint fails to state a claim upon which relief can be granted in a clear and indisputable way.

*Rare Success*: As a practical matter, the success of Rule 12(b)(6) motions **usually has more to do with the judge than the law**. Their rarity underscores the challenge in meeting the stringent standards set for such motions.

*Judicial Precedent*: Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts in support of their claims as articulated in the complaint (Next Century v. Ellis, 318 F. 3d 1023 (11th Cir. 2003)).

Plaintiff could not have said this better himself.

**b.**   **Diversity Exists, But Is Superfluous, and Claims Were Properly Pled.**

While diversity jurisdiction applies to the San Diego defendant (Ron Lee), it is not necessary in this case, due to the presence of federal questions under the Fair Housing Act and FDCPA. With regard to the claims:

1.   **Plaintiff was the Target of the Notice To Vacate.**   Defendant's argument is intellectually dishonest and legally flawed: he is a legal occupant of the Apartment, and as such, any Notice To Vacate must apply to him or would be moot.

2.   **The Assignment of Claims Is Valid And Superfluous.**  Plaintiff has standing to sue on his own accord, but also the right to purchase the pecuniary claims from his Brother, where specific amounts of money are in controversy, much like any debt-collector purchasing a debt.  Plaintiff

3

is *not* representing his brother, as the claim is now his, and he also has his own claim in the event the assignment is ruled invalid.

3. <u>**The Notice To Quit Is A Debt Collection Letter Which Damaged Plaintiff**</u>.

Plaintiff has standing on his own to file an FDCPA lawsuit, as the Notice To Quit was certainly a debt-collection letter, as it specified damages of over $20,000.00, for which Plaintiff could still be sued, and for which he could be evicted. The Notice therefore also impacted him personally. As a specific amount of money (property) is at stake (statutory damages), this is akin to a debt-collector purchasing an unliquidated debt, not a personal matter, but even if it was, Plaintiff still has standing.

4. <u>**Defendants Have Not Attempted to Collect Rent**</u>. The reason is simple: doing so would reestablish the lease, and Defendants claim to want to evict Plaintiff and his brother. Until such time as they do, any claimed rent is plenary and not possessory, and subject to massive offsets for various breaches of the rental agreement. Defendants are free to resume the payment terms of the basement lease (anything extra, including moving costs, is damages), at $1,000.00/month. Prior to October, of course, Plaintiff and his brother were *ordered* not to pay rent.

5. <u>**Defendant Baritz Is A State Actor**</u>. Bruce Cutler was a co-conspirator and not a state actor when representing John Gotti. As an officer of the Court, Defendant Baritz performs numerous functions which are the exclusive province of the Commonwealth, but is immune from suit for conduct. ChatGPT not only found precedent, but that specifically relating to housing cases, much like the prior lawsuit against Baritz:

6. <u>**The FHA Claims Are Valid**</u>. Retaliation does not require occupancy or tenancy, though each apply here. The FHA retaliation claim is valid, and sufficient to sustain all claims in federal

court under supplemental jurisdiction.  ChatGPT gave a well-reasoned analysis, to which Plaintiff has nothing to add:

> The U.S. Supreme Court in Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982), established that the sole requirement for standing to sue under the FHA is the Article III minimum of injury in fact, which means that the plaintiff must allege that as a result of the defendant's actions, they have suffered a distinct and palpable injury. This was reaffirmed in Fair Housing Foundation of Long Beach v. City of Lakewood, where the court applied these standards to determine the standing of a fair housing organization to bring an FHA retaliation claim. The organization must demonstrate that it suffered an injury in fact, which is both concrete and particularized, and actual or imminent. Moreover, there must be a causal connection between the injury and the conduct complained of, and it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision (Fair Housing Foundation of Long Beach v. City of Lakewood, 2001).
>
> Regarding the elements required to prove a retaliation claim under the FHA, the U.S. Court of Appeals for the Seventh Circuit detailed the elements as follows: (a) the plaintiff engaged in activity protected by the FHA; (b) the plaintiff was engaged in, aided, or encouraged others to exercise or otherwise enjoy their FHA-protected rights; (c) the defendant coerced, threatened, intimidated, or interfered on behalf of the statutorily protected activities; and (d) the defendant was motivated by an intent to discriminate. It's crucial for a plaintiff to demonstrate a specific protected activity that they were attempting to assert and either an intent to discriminate or at least a causal connection between the protected activity and the challenged action (Appellate Court Describes Elements of FHA Retaliation Claim, Fair Housing Defense, 2017).

Plaintiff has engaged in protected activity numerous times, and has suffered retaliatory injury.  Failure of the court to provide redress will only cause buildings to collapse or burn down, secondary to the chilling effect of not protecting this country's whistleblowers.

      7.   **<u>Plaintiff's Discrimination Claims Are Not Retaliatory</u>**.  Defendants rely on ***ad-hominem*** appeals to cynical stereotype to portray Plaintiff as a "bitter, whining loser" who lashes out at those "who do not cave into his demands," rather than as a ***whistleblower*** serving the public interest as a private attorney general.  This further underscores the retaliatory motive alleged by Plaintiff, against an attorney with a history of violating state law in order to tag Plaintiff and his brother with the ***Scarlett E.***

## II.   Plaintiff's State Law Claims Are Valid.

Plaintiff digresses:

a.   **The Breach of Contract Claim Is Valid; Plaintiff Has An Implied Lease.**  The

basement was ***condemned***.  The new apartment has no heat in the wintertime (putting Plaintiff in

danger, though he paid $250.00 to fix the broken window), no mailbox key, and no garbage dumpster,

resulting in subpar living conditions which Plaintiff is tolerating.  If this is not a breach of contract, in

addition to the other conduct set forth, Plaintiff does not know what is.   Also, under Pennsylvania law, a

guest becomes a tenant after staying at a property for thirty days, or contributing money.  Plaintiff

clearly has an ***implied lease*** which establishes his rights as a tenant.  Defendants have completely

ignored well established law in this regard, as acknowledging the obvious refutes their other attempts to

circumvent justice, a common objective of any ***slumlord***.

b.   **Plaintiff's Claim For Fraudulent Misrepresentation Is Valid.**  Plaintiff has standing

to sue because he suffered pecuniary and other injuries from the fraudulent statement to his brother.  A

reasonable person would certainly have relied on rejection of a notice of moving out as an indication of

good standing as tenants.  The notice of June 3, 2022 did not specify any change in this standing, or any

cause whatsoever relating to the incident in February.  Obviously, had Defendants wanted Plaintiff and

his brother out at that time, they had their chance.  Something changed from then through June, yet

Defendants have not explained what.

c.   **A Legitimate Controversy Exists For Declaratory Relief.**

Defendants ignore the implied contract of the implied lease created when Plaintiff began

contributing money and especially when he informed the landlord of his residency in June, 2022.

**CONCLUSION**

For the reasons set forth hereinabove, the instant motion to dismiss should be **denied**.  An appropriate form of Order is attached.

This the 9th day of January, 2024.

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4141

|  | : |  |
| --- | --- | --- |
| **GORDON ROY PARKER,** Plaintiff | : | |
| v. | : | **Case No: 23-3999-GJP** |
| **Ronald Lee** *et al,* Defendants | : | |

## <u>ORDER</u>

AND NOW, this ____th day of January, 2024, in consideration of **Defendants' Motion To Dismiss,** and all responses thereto, the motion is **denied.**

_____

**DATE**

_____

**J.**

**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>                    Plaintiff<br><br>          v.<br><br>**Ronald Lee** *et al,*<br><br>                    Defendants | **Case No: 23-3999-GJP** |

**CERTIFICATE OF SERVICE**

I, Gordon Roy Parker, Plaintiff in the above-styled action, hereby attest that I have served a copy of the foregoing **Response To Defendants' Motion To Dismiss Amended Complaint**, on the following parties, by **hand delivery** (with follow up by e-mail):

Aaron E. Moore, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin PC
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorney for Defendants Caanan and Mai*

Adam M. Barsky, Esq.
KBK Law Group
100 South Broad, #1205
Philadelphia, PA 19110
*Attorney for all other defendants.*

This the 20th day of November, 2023

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA 19107
gordonroyparker@gmail.com
(215) 951-7131

2