UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GORDON ROY PARKER<br>　　　　　　　　　*Plaintiff*<br>　v.<br>RONALD LEE; TERESA LEE; JEFFREY MAI;<br>CANAAN REALTY INVESTMENT GROUP;<br>TERESA LEE REVOCABLE TRUST; and<br>KENNETH L. BARITZ, ESQUIRE<br>　　　　　　　　　*Defendants* | Civil Case No.: 2:23-cv-03999-GJP |

**JOINT MOTION OF DEFENDANTS, RONALD LEE, TERESA LEE, TERESA LEE REVOCABLE TRUST, AND KENNETH L. BARITZ, ESQUIRE, TO DISMISS AND STRIKE PLAINTIFF'S, GORDON ROY PARKER, SECOND AMENDED COMPLAINT**

Adam P. Barsky, Esquire
KBK Law Group
100 South Broad Street, Suite 1208
Philadelphia, PA 19102
(267) 761-5090

*Attorneys for Defendants, Ronald Lee,*
*Teresa Lee, Teresa Lee Revocable Trust,*
*and Kenneth L. Baritz, Esquire*

Dated:　　　March 21, 2024

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GORDON ROY PARKER<br>                            *Plaintiff*<br>v.<br><br>RONALD LEE; TERESA LEE; JEFFREY MAI;<br>CANAAN REALTY INVESTMENT GROUP;<br>TERESA LEE REVOCABLE TRUST; and<br>KENNETH L. BARITZ, ESQUIRE<br>                            *Defendants* | Civil Case No.: 2:23-cv-03999-GJP |

**JOINT MOTION OF DEFENDANTS, RONALD LEE, TERESA LEE, TERESA LEE REVOCABLE TRUST, AND KENNETH L. BARITZ, ESQUIRE, TO DISMISS AND STRIKE PLAINTIFF'S, GORDON ROY PARKER, SECOND AMENDED COMPLAINT**

Defendants', Ronald Lee, Teresa Lee, Teresa Lee Revocable Trust, and Kenneth L. Baritz, Esquire, by and through their undersigned counsel, respectfully move the Court for an Order pursuant to Fed. R. C. P. 12(b)(6) and Fed. R. C. P. 12(f) to dismiss Plaintiff's, Gordon Roy Parker, Second Amended Complaint for failure to state a claim upon which relief can be granted, and to strike Plaintiff's Complaint for inclusion of immaterial, scandalous, impertinent, offensive, and redundant matters. Moving Defendants include a Brief and Proposed Orders in support of this instant Motion. In further support thereof, Defendants aver as follows:

**Statement of Facts as Plead**

1. On March 7, 2024, Plaintiff, Gordon Roy Parker ["Plaintiff"], filed this Second Amended Complaint against Moving Defendants, Ronald Lee, Teresa Lee, Teresa Lee Revocable Trust, and Kenneth L. Baritz, Esquire for damages in excess of Five Million Dollars ($5,000,000.00). (Second Amended Complaint attached as Exhibit "A").

2. The crux of Plaintiff's allegations stem from his brother's, Walter Parker ["Walt"], residential lease agreement and occupancy of 1011 Cherry Street, Unit BR2, Philadelphia, PA 19107.

3. Plaintiff is **not** a signatory to the Residential Lease Agreement. (Residential Lease Agreement attached as Exhibit "B").

4. It is Plaintiff's contention that "Defendants have targeted Walt, who signed the original lease…for the express purpose of retaliating against Plaintiff by attempting to make him homeless, in hope he will die on the street or simply end his life." Exhibit "A" at ¶10.

5. Plaintiff never paid rent. When Walt did pay rent, he paid rent to the Teresa Lee Revocable Trust, the Property's owner. *see* Id. at ¶ 31(b)(18).

6. Moving Defendants, Ronald Lee and Teresa Lee, are **not** the Property's record owners; pursuant to the Philadelphia Recorder of Deeds, Instrument No. 53456421, the Property's owner of record is the Revocable Trust of Teresa C. Lee Dated August 22, 2018.

7. All Notices to Quit forming the subject of Plaintiff's Fair Housing Act and Fair Debt Collection Practices Act, 15 U.S.C. 1692(d) claims are addressed to Walt.

8. The Residential Lease Agreement lists the Trust as the Property's landlord.

9. Plaintiff avers that he purchased Walt's purported claims against Moving Defendants via an Assignment of Claims instrument, and through this purchase, gives Plaintiff legal standing to proceed. Id. at ¶ 46(20).

10. This assignment does not circumvent Plaintiff's clear lack of standing; "[a] right of action strictly personal is not assignable and the general doctrine is, both in law and equity, that a right of action for a pure tort is not the subject of assignment: . . .". *Sensenig v. Pennsylvania Railroad Co.*, 229 Pa. 168, 172, 78 A. 91 (1910), *Sniderman v. Nerone*, 336 Pa. 305, 9 A. 2d 335 (1939), *affirming per curiam* 136 Pa. Super. 381, 7 A.2d 496 (1939).

11. Throughout the Second Amended Complaint, Plaintiff lays out a preexisting animus towards Mr. Baritz for his appearance as co-counsel in Plaintiff's 2017 eviction from The Fairfax Apartments in Philadelphia. *see* Id. at ¶¶ 11(g), 11(f)(6-7), 21, 33(d), 34.

12. It is important to note that Moving Defendants prevailed against Plaintiff and Walt in all preceding eviction and administrative agency proceedings to date. The Second Amended

Complaint refers to the Parties' legal history in detail. *see e.g.* Exhibit "A" at ¶ 11(e) ("[a]t trial, the Municipal Court ignored the clear violation of eviction law and said that because the hearing was thirty days after the notice, there was no harm, while ignoring the obvious and permanent harm created by the mere filing of the eviction lawsuit.")

13. Averment Thirty Three (33) makes specific reference to disciplinary proceedings against Mr. Baritz from 1984, as well as a 2003 private civil suit, none of which have any relevance to Plaintiff's claims. Id. at ¶ 33.

14. Averments Twenty One (21) and Twenty Two (22) and Exhibits "C1" through "C3" of the Second Amended Complaint illustrate Plaintiff's belief that the eviction proceedings initiated against his brother, Walt, are Moving Defendants' proxy war against Plaintiff, dating back to 2001. Exhibit "A" at ¶¶ 21-22.

15. Exhibit "B" of the Pleading refers to an internet publication article, *This Man has been Swatted 47 Times for Making a Joke about Norm Macdonald*, as somehow illustrative of Plaintiff's claims against Moving Defendants for associating with "hackers and cyberterrorists". Id. at ¶21; Id. at *Exhibit "B"*; *see also* ¶ 32 "[t]emporal proximity to the encounter with the housekeeper on June 3, 2002, Defendant Baritz's retaliatory animus, the near-certainty that at least one of the Landlord Defendants was contacted by the publishers of the doxing page on ***harassthem.com***, or simply performed a search of Plaintiff's name to find the content, and the near absolute certainty that they did so after speaking with Plaintiff on the phone on this date, all suggest retaliatory animus.")

16. Plaintiff's Second Amended Complaint remains consistent with his historic misuse of the legal system. Plaintiff is well-known to this jurisdiction as a "serial litigant", having filed over twenty four (24) lawsuits in the Pennsylvania Eastern District against defendants ranging from telecommunication giants (*Parker v. Viacom International Inc*, 605 F. Supp. 2d 659 (E.D. Pa. 2009) and internet service providers (*Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006), *aff'd* 242 F. App'x 833 (3rd Cir. 2007), to local Philadelphia institutions (*Parker v. Univ. of Pennsylvania*, No. 2:2002-cv- 00567, 2004 WL 2004099, at *1 (E.D. Pa. 2004) *aff'd*, 128 F. App'x

944 (3d Cir. 2005); *Parker v. Trustees of the Univ. of Pennsylvania*, 2:2005-cv-04874, 2008 WL 60190, at *1 (E.D. Pa. 2008) and insurance providers (*Parker v. Kelly Services, Inc. and Independence Blue Cross*, 2:2015-cv-03337 (E.D. Pa. 2015).

17. In the matter of *Parker v. Learn the Skills Corp.*, 2006 WL 759693, *4 (E.D. Pa. 2006), Judge Bartle identifies the Plaintiff as a "serial litigant"; "…we are persuaded that it would be inappropriate to allow this serial litigant Parker to conduct a fishing expedition to construct a basis for jurisdiction." Id.

18. Many, if not all, of Plaintiff's *pro se* lawsuits survive dispositive motion practice or threats of sanctions. *see e.g. Parker v. Viacom Int'l, Inc.,* 605 F. Supp. 2d 659 (E.D. Pa. 2009); *Parker v. Yahoo!,* 2008 WL 4410095 (E.D. Pa. Sept. 25, 2008); *Parker v. Learn Skills Corp.,* 530 F. Supp. 2d 661 (D. Del. 2008); *Parker v. Learn the Skills Corp.,* 2006 WL 759693 (E.D. Pa. Mar. 23, 2006); *Parker v. Learn the Skills Corp.,* 2004 WL 2384993*, at *2 n. 4* (E.D. Pa. Oct. 25, 2004); *Parker v. Google, Inc.,* 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006) *affd, 242* F. App'x 833 (3d Cir. 2007); *Parker v. Goldhagen*, 15-3304 (E.D. Pa. 2015).

19. Based upon the representations made within this Second Amended Complaint, the sheer volume of litigation filed by this individual over the past forty (40) years throughout myriad jurisdictions cannot be accounted for without protracted research.[1]

---

[1] Moving Defendants have no intention to recast this instant Motion to Dismiss as a Fed.R.C.P. 12(d) Motion for Summary Judgment, as the citations referenced are not necessary for the Court to adjudicate Defendants' motion or offered for purposes of establishing any truth. Moving Defendants request for the Court to take judicial notice of Plaintiff's *pro se* history of frivolous litigation and related hyperbole.

Relevant Averments within Plaintiff's Second Amended Complaint

20. On or about November 15, 2016, Walt moved into the Property while Plaintiff resided at the Fairfax Apartments. Exhibit "A" at ¶¶ 11; 11(d).

21. The Residential Lease Agreement between the Trust and Walt specify that the Property will have one (1) occupant. Ibid.

22. On or about February 14, 2018, Plaintiff moved into the Property without permission, "...as an indefinite occupant/caregiver" to his brother Walt, and became "trapped" within the Property because of COVID. Ibid.

23. Plaintiff's complaints about the Property include:

    a. Speculations of improper rental licensure (¶12(1));

    b. Faulty plumbing, leakage, and flooding (¶12(2));

    c. Noise from the elevator and staff access to the building's maintenance systems (¶12(4));

    d. Pest infestations from the building's first floor commercial tenant (¶12(5)); and

    e. "The perpetual threat to invade privacy..." (¶14);

24. In November 2021, Walt temporarily relocated to a larger unit within the building's third floor at the same monthly rent as the basement unit. This temporary relocation allowed maintenance to conduct repairs within the Property. Id. at ¶¶ 15-16.

25. As of November 2021, Plaintiff "remain[ed] domiciled at the Broad Street Mission," and not at the Property. Id. at ¶ 16(c).

26. Plaintiff's complaints about Apartment #3F include:

    a. "[T]he toilet had to be flushed with caution, and required toilet paper to be cleared when it got jammed." (¶16(d));

    b. No heat as of January 2023. (¶16(e));

    c. Noncompliance with Code based upon comparisons with the layout of Apartment #4F. (¶16(e));

8

d. Improper waste disposal facilities, resulting in trash accumulating in the Unit (¶16(f)).; and

e. Plaintiff's inability to "entertain clients or hold small chess gatherings, including paid lessons or high-stakes tournaments, costing him substantial income which was a factor in [Plaintiff's] funding Walt's move into Chinatown." (¶16(g)).

27. On or about February 27, 2022, Plaintiff "encountered the housekeeper in the stairs that morning, after which he heard her yelling into her cellphone in Chinese." Exhibit "A" at ¶ 18(e).

28. Walt then informed Moving Defendants that he intended to vacate the Property on or before July 31, 2022. Exhibit "A" at ¶ 17.

29. Walt did not vacate the Property on or before July 31, 2022, and continued to pay rent through November 2022 on a month-to-month basis pursuant to Section Five (5) of the Residential Lease Agreement. Exhibit "B" at § 5.

30. On November 21, 2022, the toilet in Plaintiff's apartment overflowed, and flooded adjacent apartments. Id. at ¶ 25.

31. Property Maintenance gained emergency access to Walt's Apartment, and corrected the toilet leak.

32. Since Walt's temporary relocation from the basement apartment to Apartment #3F in November 2021, Walt did not execute a new lease for the larger third floor apartment.

33. On December 27, 2022, Property Manager, Jeffrey Mai, provided Walt with a Residential Lease Agreement to rent Apartment #3F for a term of one (1) year at Two Thousand and Two Hundred Dollars ($2,200.00) per month. Id. at ¶ 25(a); see Id. at Exhibit "E"—Apartment #3F Lease Agreement.

34. Walt rejected the new lease for Apartment #3F. It is Plaintiff's contention that the increased monthly cost of the larger apartment, as compared with a previously available unit once occupied by "younger, nonwhite female tenants" constitutes housing discrimination practices. Id. at ¶ 25(b)(1).

9

35. On August 22, 2023, Walt—not Plaintiff—received a Notice to Quit for arrears and damages in the amount of Twenty Thousand and Three Hundred Dollars ($20,300.00). Exhibit "A" at ¶ 26.

36. In response to the August 22, 2023 Notice to Quit, Plaintiff—not Walt—filed a complaint with the Philadelphia Commission on Human Relations. The PCHR rejected Plaintiff's Complaint, stating that Plaintiff "…was neither a tenant nor occupant, and did not have a lease." Id. at ¶ 27.

**Second Amended Claims Propounded against Moving Defendants**

37. Count I—Fair Housing Act Retaliation avers that all Defendants engaged in retaliatory conduct against Plaintiff for excluding Plaintiff from Walt's Notices to Quit, offering Walt a "lease renewal" for the new apartment at an increased monthly rent, "[n]ot offering Plaintiff (and Walt) either #2F or #2R" one-bedroom apartments, and generally "[d]enying Plaintiff's legal occupancy and/or tenancy in the premises." Id. at ¶¶ 33(a)-(f).

38. This same section accuses Attorney Baritz of personal animus and retaliatory conduct. Plaintiff explicitly refers to unrelated disciplinary actions against Attorney Baritz circa 1984 as evidence of retaliation. Ibid.

39. In aggregate, Plaintiff claims that Defendants' conduct resulted in "…endured pain and suffering, mental anguish, damage to his finances because he has to divert money to potential new housing, and extreme and completely unnecessary housing instability, all because Defendants have chosen to hang a perpetual threat of life-threating eviction over [Plaintiff's] head." Id. at ¶ 36.

40. Plaintiff seeks an amount in excess of **Five Million Dollars ($5,000,000.00)**. Id. at pg. 15.

41. Beginning at Averment Thirty Eight (38), Plaintiff groups together "Counts II-IV: Fair Housing Act Discrimination (Gender, Race, Age) (All Defendants Except Baritz). Ibid.

42. It is Plaintiff's claim that the "Landlord Defendants discriminated against Plaintiff…by giving preferential treatment to nonwhite females, both renting, and in their treatment of tenants." Exhibit "A" at ¶ 39.

43. The following averments merely restate Plaintiff's belief that he and Walt did not receive fair treatment based upon their race, age, and gender. All allegations consist of subterfuge.

44. Plaintiff also believes that Moving Defendants conspired with other tenants of the building for the specific purpose to stigmatize he and Walt. *see* Id. at ¶ 39(b).

45. Count V accuses Attorney Baritz of violating the Fair Debt Collections Practices Act, 15 U.S.C. 1692(d), arising from the August 22, 2023 Notice to Quit addressed to Walt. Id. at ¶ 44.

46. Aside from Plaintiff's lack of standing to assert this claim against Attorney Baritz, the entirety of Count V fails to state a plausible cause of action under the FDCPA, let alone, damages stemming therefrom.

47. Count VI—Breach of Contract avers that Moving Defendant Landlords are in breach of a contract between Plaintiff and Moving Defendants. Id. at ¶ 49.

48. Plaintiff **never** entered into a contract with any single defendant.

49. This Count asks for monetary damages, including "loss of chess-related income", as well as punitive damages. Id. at ¶¶ 52-3.

50. Lastly, Count VII seeks Declaratory Relief, asking the Court to find that Plaintiff and his brother are the subjects of landlord retaliation, did not cause damage to the Property, no arrears are due from Plaintiff (or his brother), and that Plaintiff is a tenant as a matter of law. Id. at ¶¶ 54-55.

51. This Count for Declaratory Relief reveals Plaintiff's true intentions of filing suit—to preempt and defend against a landlord tenant matter, albeit in the Federal Court.

52. In aggregate, Plaintiff's claims against Moving Defendants are entirely implausible, and must be dismissed with prejudice pursuant to Rule 12(b)(6). *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (*internal citations omitted*).

53. Pursuant to 28 U.S.C.S § 1332, complete diversity between the Parties does not exist, as Plaintiff and a majority of the Defendants are citizens of the Commonwealth of Pennsylvania. Since this matter is not before this Court due to removal, dismissal is proper.

54. Furthermore, Plaintiff's demand for Five Million Dollars ($5,000,000.00) is an impossible outcome based upon the allegations as plead, interwoven with his clear lack of standing to proceed as a non-injured person. There exists no plausible scenario in which Plaintiff prevails against any defendant for an amount in excess of Seventy Five Thousand Dollars ($75,000.00).

55. Additionally, each and every allegation set forth within Plaintiff's Complaint against Moving Defendants must be stricken pursuant to Rule 12(f) for inclusion of scandalous, impertinent, immaterial, and alarmingly prejudicial statements.

WHEREFORE, Moving Defendants respectfully request that this Honorable Court enter an Order dismissing Plaintiff's Second Amended Complaint with prejudice, or striking the allegations propounded against the same.

Respectfully submitted,

KBK LAW GROUP

_____
Adam P. Barsky, Esquire
KBK LAW GROUP
100 S. Broad Street
Suite 1208
Philadelphia, PA 19102
(267) 761-5090

*Attorneys for Defendants, Ronald Lee, Teresa Lee, Teresa Lee Revocable Trust, and Kenneth L. Baritz, Esquire*

Dated: March 21, 2024