UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GORDON ROY PARKER *Plaintiff* <br><br> v. <br><br> RONALD LEE; TERESA LEE; JEFFREY MAI; CANAAN REALTY INVESTMENT GROUP; TERESA LEE REVOCABLE TRUST; and KENNETH L. BARITZ, ESQUIRE *Defendants* | Civil Case No.: 2:23-cv-03999-GJP |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF DEFENDANTS, RONALD LEE, TERESA LEE, TERESA LEE REVOCABLE TRUST, AND KENNETH L. BARITZ, ESQUIRE, TO DISMISS AND <u>STRIKE PLAINTIFF'S, GORDON ROY PARKER, THIRD AMENDED COMPLAINT</u>**

I.  **INTRODUCTION**

On June 10, 2024, the Court granted every Defendants' Motion to Dismiss *pro se* Plaintiff's, Gordon Roy Parker, Second Amended Complaint pursuant to <u>Fed. R. C. P.</u> 12(b)(6). Pursuant to the June 10, 2024 Order and accompanying Judicial Memorandum, Plaintiff received leave to file a Third Amended Complaint with specific instructions regarding the Third Amendment's content. On June 27, 2024, Plaintiff filed his Third Amended Complaint against all Defendants.[1] The introductory preamble to Plaintiff's Third Amended Complaint accuses the Court of employing <u>R.</u> 12(b)(6) as "the primary weapon used against *pro se* litigants, and categorizes Judge Pappert's June 10, 2024 Order as "flawed and inaccurate".

---

[1] Plaintiff's Third Amended Complaint is attached hereto as Exhibit "A".

The Third Amended Complaint alleges that Moving Defendants, Ronald Lee, Teresa Lee, Teresa Lee Revocable Trust, and Kenneth L. Baritz, Esquire ["Moving Defendants"], are liable to Plaintiff for Retaliation under the Fair Housing Act (Count I); for Retaliation under the Fair Labor Standards Act (Count II); for Race and Gender Discrimination under the Fair Housing Act (Count III); violation of the Americans with Disabilities Act (Count IV); and Fraudulent/Negligent Misrepresentation (Count V). Additionally, Count VI of Plaintiff's Complaint seeks declaratory judgment against all Defendants. The facts within Plaintiff's Third Amended Complaint do not give rise to any viable claims against Moving Defendants. Therefore, it is proper to dismiss this matter with Prejudice.

## II.     STATEMENT OF RELEVANT FACTS

On March 7, 2024, Plaintiff, Gordon Roy Parker ["Plaintiff"], filed this Third Amended Complaint against Moving Defendants, Ronald Lee, Teresa Lee, Teresa Lee Revocable Trust, and Kenneth L. Baritz, Esquire for damages in excess of Five Million Dollars ($5,000,000.00). (*see* Third Amended Complaint at ¶ 54). The Complaint's first eleven (11) pages consist of incongruous allegations of internet conspiracies, secret societies aligned against Plaintiff and his brother Walt (*i.e.* "Kiwi Farms websites"), and tangential accounts of perceived injustices against the Parker family from 2001 through the present. (*see* Third Amended Complaint at ¶¶ 14, 16(a-r); 33.. Plaintiff initially refers to Attorney Baritz as a "co-conspirator as a state actor (officer of the court)", and accuses Attorney Baritz of "abusing his state-given power to enforce the laws of the Commonwealth through litigation..." (Third Amended Complaint at ¶ 16(s). Throughout the Third Amended Complaint, Plaintiff lays out a preexisting animus towards Mr. Baritz for his appearance as co-counsel in Plaintiff's 2017 eviction from The Fairfax Apartments in Philadelphia. (Third Amended Complaint at ¶ 16).

Plaintiff's allegations stem from his brother's, Walter Parker ["Walt"], residential lease agreement and occupancy of 1011 Cherry Street, Unit BR2, Philadelphia, PA 19107 beginning in 2016. Plaintiff is not a signatory to the Residential Lease Agreement.[2] Moving Defendants, Ronald Lee and Teresa Lee, are **not** the Property's record owners; pursuant to the Philadelphia Recorder of Deeds, Instrument No. 53456421, the Property's owner of record is the Revocable Trust of Teresa C. Lee Dated August 22, 2018. The Residential Lease Agreement lists the Trust as the Property's landlord. Plaintiff never paid rent. When Walt did pay rent, he paid rent to the Teresa Lee Revocable Trust, the Property's owner. (Third Amended Complaint at ¶ 29).

On or about November 15, 2016, Walt moved into the Property while Plaintiff resided at the Fairfax Apartments. In "late January, 2018", Walt "welcomed Plaintiff 'indefinitely'" into the Subject Property without prior authorization from the Property's Owner. Id. at ¶ 17. As a result of COVID, Plaintiff alleges that the City's lockdown effectively caused him to become a tenant of the Property, as "…this was his only place to live, and he was precluded from moving again to New York City…" Id. at ¶ 23.

In November 2021, Walt temporarily relocated to a larger unit within the building's third floor at the same monthly rent as the basement unit. This temporary relocation allowed maintenance to conduct repairs within the Property. Id. at 29. Plaintiff followed his brother to the new apartment. In February 2022, Walt (or Plaintiff) engaged in a confrontation with the Property's on-site maintenance worker. Shortly thereafter, the Property's manager, Jeffery Mai of Canaan Realty Investment Group, sent a text message to Walt that instructs Walt—not Plaintiff—to "work [] out" all issues with the Property. This text message string with Walt calls Walt a "very long term tenant". (Third Amended Complaint at Exhibit "A"). Plaintiff does not claim that Walt ever renewed his preexisting Residential Lease Agreement.

---

[2] Residential Lease Agreement attached hereto as Exhibit "B".

5

On or about June 3, 2022, Walt received a Notice to Vacate the Property by June 30, 2022. (Third Amended Complaint at ¶ 32). Walt informed Moving Defendants that he intended to vacate the Property on or before July 31, 2022, but proceeded to file two (2) complaints with the Pennsylvania Commission on Human Relations ["PHCR"]. The PCHR dismissed Plaintiff's Complaint for lack of standing for not being a tenant of the Property. (Third Amended Complaint at ¶ 35). Since Walt's temporary relocation from the basement apartment to Apartment #3F in November 2021, Walt did not execute a new lease for the larger third floor apartment.

On December 27, 2022, Property Manager, Jeffrey Mai, provided Walt with a Residential Lease Agreement to rent Apartment #3F for a term of one (1) year at Two Thousand and Two Hundred Dollars ($2,200.00) per month. Id. at ¶ 41 as Exhibit "C". Walt rejected the new lease for Apartment #3F. It is Plaintiff's contention that the terms of the offer constituted a "backdoor eviction", and "would not have happened if Plaintiff were Chinese, or female." Ibid. It is Plaintiff's unfounded opinion that "…it would be politically impossible for [Moving Defendants] to treat any Chinese or Asian tenants as they have treated Plaintiff (and Walt)…" Id. at ¶ 43. He claims that "Apartment #2R was later rented to minority tenants, and never offered to Plaintiff or Walt…" Id. at ¶ 41(e). The Third Amended Complaint does not identify the race of said "minority tenants."

On August 22, 2023, Walt—not Plaintiff—received a Second Notice to Quit for arrears and damages from Attorney Baritz' law firm acting as the legal representative of Defendant Trust. Id. at ¶ 37. In response to the August 22, 2023 Notice to Quit, Plaintiff—not Walt—filed a complaint with the Philadelphia Commission on Human Relations. The PCHR rejected Plaintiff's Complaint for lack of standing. Id. at ¶ 35.

Count I—Fair Housing Act Retaliation appears to claim that all Defendants engaged in retaliatory conduct against Plaintiff for race and gender discrimination. Id. at ¶ 38. Plaintiff seems to also claim that Moving Defendants' Second Motion to Dismiss constitutes "retaliatory animus underlying the retaliatory conduct…" by "[r]eferring to Plaintiff as a misogynist, ***depraved***, serial litigant (a term

6

also quoted by Middlecamp), who takes out his anger on the world through frivolous litigation…"[3] Despite Plaintiff's hyperbole, no where within Count I does Plaintiff support allegations that Moving Defendants retaliated against him in violation of the FHA. At no time did Plaintiff occupy the Property as a tenant, or receive any form of lease renewal. This same section accuses Attorney Baritz of personal animus and retaliatory conduct based upon prior litigation. Ibid. This statement does not support a claim for retaliation.

Count II of Plaintiff's Third Amended Complaint alleges that Moving Defendants engaged in retaliatory conduct pursuant to the FLSA. This claim is identical to the claims set forth in Count III of the Third Amended Complaint. Plaintiff fails to set forth a cognizable claim in Count II, let alone how legislature applying to working standards and employment applies to any claims against Moving Defendants.

Count III of Plaintiff's Third Amended Complaint alleges that Moving Defendants are liable for gender and race discrimination under the FHA. Plaintiff alleges that "Landlord Defendants violated Plaintiff's rights by refusing to offer him a rental that was offered to female or Chinese residents, and in their everyday treatment of Plaintiff." (Third Amended Complaint at ¶ 64). Additionally, Plaintiff alleges that Moving Defendants "discriminated [against him] by offering Walt a one-occupant lease, when the previous and other occupants of similar units were offered two-occupant leases." Id. at ¶ 65. Count III fails to set forth any reason to infer from the alleged actions that racial and/or gender discrimination occurred, especially given that Plaintiff's brother, Walt—a white male—received a lease and renewals throughout his tenancy.  It remains entirely unclear how and why any defendant to this matter relates to the alleged trespass of a Chinese neighbor into the Property, and discrimination derived therefrom.

Count IV of Plaintiff's Third Amended Complaint alleges that Moving Defendants are liable pursuant to the Americans with Disabilities Act. Plaintiff does not claim to be disabled, but hinges his

---

[3] Averment Three (3) of Moving Defendants' Second Motion to Dismiss reads *verbatim*: "The first Motion dispositive of Plaintiff's allegations seeks dismissal based upon his lack of standing to litigate the claims of third persons, legal insufficiency on all counts, and inclusion of unquestionably depraved conspiracy theories against Defendants, including accusations to cause the Plaintiff's death." It does not categorize the Plaintiff as "depraved".

7

argument upon the "depraved conspiracy theory" statement within Moving Defendants' Second Motion to Dismiss. Plaintiff's Third Amended Complaint fails to sufficiently set forth good cause to assert claims against Moving Defendants, or any defendant to this matter, for violations of the Americans with Disability Act. He does not have standing to proceed.

Count V of Plaintiff's Third Amended Complaint alleges that Moving Defendants engaged in Fraudulent/Negligent Misrepresentation. This Court declines to exercise supplemental jurisdiction over State law claims pursuant to 28 U.S.C. § 1367(c)(3). The only allegation in support of Count V is, "[t]he Second Notice to Vacate from Baritz, made on behalf of the Landlord Defendants, was fraudulent because the Landlord had no active rental license for the Building." (Third Amended Complaint at ¶ 78). The Second Notice to Vacate was directed to Walt, not to Plaintiff. Even if Plaintiff was a recognized tenant of the Property, an unsuccessful Notice to Vacate does not give rise to fraud or negligence. Plaintiff cannot claim damages, let alone damages for "having to divert what little life energy [Plaintiff] as left to drafting a complex federal complaint." Id. at ¶ 81.

Lastly, Count VI of Plaintiff's Third Amended Complaint seeks declaratory relief against "all relevant defendants". It is entirely unclear what Plaintiff means by "all relevant defendants", and as instructed by the Court, declaratory relief is not a valid cause of action. Therefore, it is improper as a matter of law.

### III. LEGAL ARGUMENT

#### a. Standard of Law

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief can be granted. For a Complaint to survive a Motion to Dismiss, the pleadings must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is appropriate "if it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations." *Byars v. School District of Philadelphia*, 942 F. Supp. 2d 552, 561 (E.D. Pa. 2013). A Court "…need not credit a complaint's bald assertions or 'legal conclusion' when deciding a motion to dismiss'". *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3rd Cir. 1997).

The "plausibility" standard employed by the Supreme Court in *Ashcroft*, "asks for more than a sheer possibility that a defendant has acted unlawfully", or pleadings rife with "naked assertion[s] devoid of further factual enhancement." *Ashcroft* at 678. (*internal citations omitted*). A claim has "facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp.* at 556. "The plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 813 (E.D. Pa. 2016) (*quoting Ashcroft* at 679). If the factual allegations within a complaint are insufficient "to raise a right to relief above the speculative level", dismissal of the pleadings is appropriate. *Twombly* at 555.

### b. Plaintiff fails to Sufficiently Plead any Claim for Retaliation under the Fair Housing Act

Count I of Plaintiff's Third Amended Complaint seeks damages against all defendants for "Fair Housing Retaliation". Pursuant to 42 U.S.C.A. § 3617:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this Title.

"To prevail on a § 3617 claim, a plaintiff must show that (1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Mahdi Sufi El v.*

*People's Emergency Ctr.*, 315 F. Supp. 3d 837, 842 (E.D. Pa. 2018) *citing Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009). The Complaint must consist of facts reflecting that a causal link exists between Plaintiff's engagement in a protected activity, and the defendants' coercion, threats, intimidation, or interference. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

A prima facie review of Plaintiff's Third Amended Complaint does not sufficiently plead that Moving Defendants engaged in any conduct with an underlying motivation to coerce, intimidate, threaten, or interfere with an activity protected by the FHA. A mere possibility of a claim does not satisfy the pleading requirements of plausibility. *see Walker* at 84. Accordingly, Plaintiff fails to state facts that, if proven, give rise to a viable claim for retaliation under the FHA. This Count should therefore be dismissed with prejudice against all Defendants, including Moving Defendants.

### c. Plaintiff Fails to State a Claim for Retaliation under the Fair Labor Standards Act

Count II of Plaintiff's Third Amended Complaint attempts to plead claims for retaliation under the FLSA. Precedent clearly holds that the intent of the FLSA is to establish "certain minimum wage, maximum hours, and other working conditions to protect workers…Congress included in the FLSA an anti-retaliation provision (at Section 15(a)(3)) to encourage employees to assert their rights without fear of economic retaliation which might often operate to induce aggrieved employees to quietly accept substandard conditions." *Uronis v. Cabot Oil & Gas Corp.*, 49 F. 4th 263, 269 (3rd Cir. 2022).

Plaintiff is not an employee of Moving Defendants. Plaintiff never sought employment with Moving Defendants. The FLSA is entirely inapplicable to the facts purported within Plaintiff's Complaint. Therefore, Count II must be dismissed against all Defendants, including Moving Defendants, with prejudice.

**d. Plaintiff Fails to State a Claim for Fair Housing Discrimination**

Count III of Plaintiff's Third Amended Complaint claims that Moving Defendants discriminated against him based upon his gender, race, and age. As defined by *Mahdi Sufi El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 842 (E.D. Pa. 2018), the FHA prohibits discrimination "…in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Id. at 842. A party alleging discrimination must sufficiently plead "facts from which one could infer that a discriminatory purpose was a motivating factor behind the challenged actions, or that any Defendant's action or practices disproportionately burdened a protected class of which [Plaintiff] is a member, so as to cause a disparate impact." *Rosado v. Whitcraft*, 2023 WL 8720137 at *8 (E.D. Pa. Dec. 15, 2023). However, "conclusory speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA." Id. A Complaint that merely consists of "vague allegations of wrongdoing with no factual elaboration, is insufficient to state a claim." *White v. Barbe*, 767 Fed. Appx. 332, 335 (3rd Cir. 2019).

It is Plaintiff's contention that the all Defendants (including those without equitable interests in the Property), discriminated against him based upon his identification as a white male. Plaintiff avers that "landlord defendants rented on more favorable terms to non-white female tenants." First and foremost, Attorney Baritz is not the Property's Owner, nor has any say in renting the Property to prospective tenants. His participation in this matter stems from his legal representation of the Property Owner's possessory rights to the Property from Plaintiff's brother, Walt.

Plaintiff blanketly and unfairly concludes that because the Property is in Chinatown that "it would be politically impossible for the Landlord Defendants to treat any Chinese or Asian tenants as they have treated Plaintiff (and Walt)…" (Third Amended Complaint at ¶ 43). This statement is preceded by photographs of Chinatown with a caption "Do we 'preserve' White neighborhoods?" Ibid. Throughout Plaintiff's Third Amended Complaint, he relies upon conclusory speculations of racial and gender discrimination based upon the neighborhood's demographics. To the contrary, the Property's

11

Owner offered Walt—a white male—rental and renewal opportunities. There does not exist a modicum of fact in support of any claim that Moving Defendants engaged in any discriminatory practices. Therefore, Count III must be dismissed with prejudice.

### e. Plaintiff Fails to State a Claim pursuant to the Americans with Disabilities Act

Count IV of Plaintiff's Third Amended Complaint alleges that all Defendants are liable under the Americans with Disabilities Act. Plaintiff now claims to be a protected person under the ADA because Moving Defendants categorized Plaintiff's conspiracy theories as "depraved". Plaintiff also avers that he may proceed with a claim under 72 U.S.C.A. § 12182(b)(2)(A)(iv) because of the Property's broken elevator.

"To state a claim under Title II, Plaintiff must allege: '[1] he is a qualified individual with a disability; [2] that he was excluded from a service, program, or activity of a public entity; and [3] that he was excluded because of his disability." *Mahdi Sufi El* at 843. "To state a claim under Title III, Plaintiff must allege that: '(1) he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation; (3) by any person who owns or operates a place of public accommodation.'" Ibid.

Plaintiff fails to plead facts sufficient to establish standing under the ADA. Even if Plaintiff did sufficiently establish standing, privately owned apartments and condominiums do not constitute places of public accommodation, even where the property accepts tenants receiving federal housing subsidies." Id. at 844. Therefore, Plaintiff's ADA claims against all Defendants should be dismissed with prejudice.

### f. Plaintiff Fails to State a Claim for Fraudulent/Negligent Misrepresentation

Count V of Plaintiff's Third Amended Complaint claims that Moving Defendants engaged in Fraudulent/Negligent Misrepresentation. More specifically, Plaintiff claims that the "Second Notice to Vacate from Baritz, made on behalf of the Landlord Defendants, was fraudulent because the Landlord had no active rental license for the Building." (Third Amended Complaint at ¶ 78. Even if the facts giving rise to Plaintiff's allegations were directed towards Plaintiff personally, this conduct does not satisfy the elements of both fraud or negligent misrepresentation. The Second Notice to Vacate was issued and delivered to Plaintiff's brother, Walt, and **not** Plaintiff.

To establish a cause of action for fraudulent misrepresentation, a plaintiff must allege the following elements: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Bortz v. Noon*, 556 Pa. 489, 499, 729 A.2d 555, 560 (1999). However, "a promise to do something in the future, which promise is not kept, is not fraud." *Krause v. Great Lakes Holdings, Inc.*, 387 Pa. Super. 56, 67 (1989). Negligent Misrepresentation differs from Fraud based upon a reasonable person knew or should have known that the alleged misrepresentation was false. *see Commonwealth v. TAP Pharmaceuticals,* 36 A.3d 1197 (Pa. Cmwlth. 2011).

Moving Defendants never made any representations to Plaintiff. Moving Defendants never induced any form of justifiable reliance from Plaintiff because no representations were offered to him. Plaintiff's claims for damages in the form of "life energy", "pain, suffering, and mental anguish" are intangible and illusory. At all times material hereto, Plaintiff is not a tenant. Therefore, Count V should be dismissed with prejudice.

Plaintiff avers that the two (2) Notices to Quit, "…each of which target Plaintiff under pretext of targeting Walt, and each of which was fatally defective…" are "in violation of the PCHR order of February 1, 2023, which had yet to be overturned at the time of the Notice." Exhibit "A" at ¶ 33. Pursuant to the Fair Housing Act, "it is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed any right granted protection by 42 U.S.C.S. § 3604." 42 U.S.C.S. § 3617. "Unlawful activity includes 1) retaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the FHA, 24 C.F.R. § 100.400(c)(5), and 2) retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority, 24 C.F.R. § 100.400(c)(6). *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 894 (2017).

First and foremost, the PCHR rejected Plaintiff's Complaint for lack of standing to proceed. Second, correlation does not equate to causation; "[t]o prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) [he] engaged in a protected activity; (2) the defendant subjected [him] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Loyd* at 904. Walt—not Plaintiff—received the Second Notice to Quit as a direct result of ongoing non-payment of rent, property damage, and holdover tenancy. Walt and Plaintiff continue to occupy the Property for free and without a valid lease. However, upon closer inspection of the August 22, 2023 Notice to Quit, it is not a debt collection letter, but landlord's notice of its intentions not to renew Walter's leasehold. It is not a collection letter, or a communication directed towards Plaintiff. In *arguendo*, just because Plaintiff tried and failed to file a PCHR Complaint does not categorically define Moving Defendants' subsequent Notices as retaliation. Third, the highly defamatory comments within this

14

section directed to Attorney Baritz serve no purpose other than to insult his character. Plaintiff's allegations as to retaliation both lack standing and merit.

Combined Counts II-IV of Plaintiff's Amended Complaint restates the same arguments from the Original Complaint, specifically that all Defendants violated the FHA for discriminating against older, Caucasian men such as Walt and Plaintiff. *see gen.* Second Amended Complaint. The FHA makes it unlawful to refuse to rent, or to otherwise make unavailable or deny, a dwelling to a person because of sex. 42 U.S.C. § 3604. The FHA defines discriminatory housing practices, in pertinent part, "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). To sufficiently allege a violation of the FHA, Plaintiff must state facts that would allow the Court to infer that Moving Defendants did one of the unlawful acts listed within § 3604. *Alexander v. Riga*, 208 F.3d 419, 427 (3rd Cir. 2000).

### g. Plaintiff is not Entitled to Declaratory Relief

Count VI of Plaintiff's Third Amended Complaint seeks declaratory relief against all Moving Defendants. Many of the declarations seek relief from the Property's Owner. Except for the Trust, Moving Defendants do not possess an equitable interest in the Property. As non-owners, particularly Attorney Baritz, declaratory relief in this form is inapplicable.

"[D]eclaratory judgment is a remedy and not a cause of action, and '[a] plaintiff is required to prevail on the merits to obtain declaratory relief.'" *Parker v. Lee*, 2024 U.S. Dist. LEXIS 103314, *24 (E.D. Pa. June 11, 2024) *quoting* *Campbell v. Pa. Sch. Bds. Ass'n*, 336 F. Supp. 3d 482, 504 (E.D. Pa. 2018). As matters of well-defined law, Plaintiff cannot prevail on the merits of any of his claims. Therefore, Count VI must be dismissed with prejudice.

**IV.** <u>**Conclusion**</u>

Based upon the aforementioned arguments, Moving Defendants respectfully request for this Honorable Court to grant their Joint Motion to Dismiss Plaintiff's Third Amended Complaint with prejudice.

Respectfully submitted,

KBK LAW GROUP

_____
Adam P. Barsky, Esquire
KBK LAW GROUP
100 S. Broad Street
Suite 1208
Philadelphia, PA 19102
(267) 761-5090

*Attorneys for Defendants, Ronald Lee, Teresa Lee, Teresa Lee Revocable Trust, and Kenneth L. Baritz, Esquire*

Dated: July 16, 2024