IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,

               *Plaintiff,*

   v.

RONALD LEE, et al.,

               *Defendants.*

CIVIL ACTION
NO. 23-3999

**Pappert, J.**                                                  **August 20, 2024**

**<u>MEMORANDUM</u>**

The Court summarized this case's factual background in a prior Memorandum. *See Parker v. Lee*, No. 23-3999, 2024 WL 2943766, 2024 U.S. Dist. LEXIS 103314 (E.D. Pa. June 10, 2024) (ECF No. 28.)  In essence, Gordon Roy Parker alleges the defendants attempted to illegally push him and his brother, Walt, out of Walt's Chinatown apartment, where Parker has also lived for several years.

Parker sued Ronald and Teresa Lee, the Teresa Lee Revocable Trust and Kenneth L. Baritz (the "Landlord Defendants"), as well as Jeffrey Mai and Canaan Realty Investment Group ("Canaan Defendants").  In his Third Amended Complaint, he alleges "All Defendants" unlawfully retaliated against him in violation of the Fair Housing Act (Count I) and the Fair Labor Standards Act (Count II), discriminated against him on the basis of race and sex (styled as gender) in violation of the FHA (Count III), and violated his rights under the Americans with Disabilities Act (Count IV).  Parker contends the Landlord Defendants also committed fraudulent or negligent misrepresentation (Count V).  Finally, he seeks extensive declaratory relief (Count VI).

The defendants again separately move to dismiss.  The Court largely grants the motions but denies them as to Parker's FHA retaliation claim.

I

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense."  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016)).  In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them.  *Connelly*, 809 F.3d at 790.  "Conclusory assertions of fact and legal conclusions," however, are not entitled to the presumption of truth. *Schuchardt*, 839 F.3d at 347.  "A complaint must do more than *allege* entitlement to relief;" it must "'show' such an entitlement with its facts."  *Hart v. City of Philadelphia*, 779 F. App'x 121, 125 (3d Cir. 2019) (per curiam) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009)).  So "[a] pleading that offers 'labels and conclusions' or

2

'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Because Parker is proceeding *pro se*, the Court construes his claims liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F.3d at 245).

## II

The Court previously dismissed Parker's FHA retaliation claim because he had "not alleged he engaged in activity protected by the FHA, a prerequisite for a retaliation claim."  *See Parker*, 2024 U.S. Dist. LEXIS 103314, at *10.  Parker has cured this defect and states a plausible claim for retaliation under the FHA.

After Walt was emailed a notice to vacate in June 2022, Parker and Walt each filed complaints with the Philadelphia Commission on Human Relations.  (Third Am. Compl. ¶¶ 32, 35, ECF No. 30.)  Among other things, Parker complained to the PCHR about alleged race, gender and disability discrimination.  (Parker Intake Form, Third Am. Compl. pp. 34–40).[1]  The PCHR held a hearing in February 2023, during which the agency ruled "that the Landlord Defendants could not collect rent" from Parker and Walt.  (Third Am. Compl. ¶ 36.)[2]  Parker also filed an intake form with the PCHR on

---

[1]     Parker attaches this form to the Third Amended Complaint, and the Court can consider it. *See Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) ("Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record."); *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 178 (3d Cir. 2024) (explaining that courts may consider "documents integral to or explicitly relied upon in the complaint . . . ." (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016))).

[2]     This order was later overturned in October.  (Third Am. Compl. ¶ 38.)

August 14, 2023.  (Parker Intake Form, Third Am. Compl. pp. 34–40.)  And he alleges that on August 22, 2023, Baritz, "on behalf of the Landlord Defendants, issued a second Notice to Vacate, in violation of the PCHR Order . . . ."  (Third Am. Compl. ¶ 37.) Parker believes the Landlord Defendants sent this notice to retaliate against him and Walt for filing complaints with the PCHR.  (*Id.* ¶ 49.d.)  Liberally construed in light of Parker's *pro se* status, that is enough.

A

Section 3617 of the FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  42 U.S.C. § 3617.  The Department of Housing and Urban Development has promulgated regulations further defining conduct unlawful under § 3617.  *Lloyd v. Presby's Inspired Life*, 215 F. Supp. 3d 891, 904 (E.D. Pa. 2017); 24 C.F.R. § 100.400(a).  These regulations prohibit "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the [FHA]," as well as "[r]etaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority." 24 C.F.R. § 100.400(c)(5)–(6).

To state a § 3617 retaliation claim, a plaintiff must allege that "(1) [he] engaged in a protected activity; (2) the defendant subjected [him] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action."  *Rosado v. Whitcraft*, No. 23-3717, 2023 WL 8720137, 2023 U.S. Dist. LEXIS 224332, at *18 (E.D.

4

Pa. Dec. 15, 2023) (alterations in original) (quoting *Lloyd*, 251 F. Supp. 3d at 904).  At

the motion to dismiss stage, Parker need not establish this *prima facie* case; he must

only allege "enough facts to raise a reasonable expectation that discovery will reveal

evidence of the necessary elements."  *Connelly*, 809 F.3d at 788–89 (cleaned up)

(quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

B

Parker adequately alleges that he engaged in protected activity because he

complained to the PCHR about purported race, gender and disability discrimination.

"Protected activity . . . includes the filing of complaints with federal or local housing

authorities, or even less formal means of protest, so long as the complaint is related to

unlawful discrimination."  *Kris v. Dusseault Fam. Revocable Tr. of 2017*, No. 18-566,

2019 WL 4647211, 2019 U.S. Dist. LEXIS 163029, at *13 (D.N.H. Sept. 24, 2019) (citing

*Wilson v. Wilder Balter Partners, Inc.*, No. 13-2595, 2015 WL 685194, 2015 U.S. Dist.

LEXIS 19178, at *33–36 (S.D.N.Y. Feb. 17, 2015)); *see also Riley v. City of Kokomo*, 909

F.3d 182, 192 (7th Cir. 2018).  And issuing the notice to vacate was an adverse action

under the FHA.  *See Bartlett v. Hames*, No. 5:18-1096, 2023 WL 4038657, 2023 U.S.

Dist. LEXIS 104617, at *46 (N.D. Ala. June 15, 2023); *Neudecker v. Boisclair Corp.*, 351

F.3d 361, 364 (8th Cir. 2003) ("Although the retaliatory conduct in this case

involved only threats of eviction, which were never carried out, we find Neudecker

sufficiently alleged an adverse action, at least at this early pleading stage.").

Parker also adequately alleges a causal link between the protected activity and

adverse action.  "[T]emporal proximity between the protected activity and the

termination [can be] itself sufficient to establish a causal link."  *Qing Qin v. Vertex, Inc.*,

5

100 F.4th 458, 476 (3d Cir. 2024) (quoting *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004)).[3]  For temporal proximity alone to be sufficient, the timing of the alleged retaliatory action must be "unusually suggestive" of a retaliatory motive.  *Id.* (quoting *Williams*, 380 F.3d at 760).  Retaliatory actions taken within a "threemonth range" of the protected activity are unusually suggestive of such a motive. *Id.* at 477 (quoting *Williams*, 380 F.3d at 760).  The second notice to vacate was issued on August 22, only eight days after Parker filed his intake form with the PCHR.[4]

While Parker states an FHA retaliation claim against the Landlord Defendants, he fails to do so against the Canaan Defendants.  Parker alleges Baritz issued the second notice to vacate on behalf of the other Landlord Defendants, but he does not allege the Canaan Defendants played any part in this decision.  (Third Am. Compl. ¶ 37.)[5]

---

[3]     While this case involved a Title VII retaliation claim, *see Qing Qin*, 100 F.4th at 469–470, courts "frequently rely on . . . Title VII jurisprudence to guide [their] understanding of the FHA's antidiscrimination provisions."  *Curto v. A Country Place Condo Ass'n*, 921 F.3d 405, 411 n.4 (3d Cir. 2019) (citing *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 n.5 (3d Cir. 2005)); *see also Sekel v. CH MF BTH II*, No. 1:23-706, 2024 WL 387642, 2024 U.S. Dist. LEXIS 17618, at *11–12 (E.D. Va. Jan. 31, 2024) (applying temporal proximity rules from Title VII cases to an FHA retaliation claim).

[4]     Although this document is an intake form, it is plausible the Landlord Defendants were aware of it.  Parker indicated to the PCHR that he wanted to file a complaint of discrimination rather than talking to an agency employee first, which meant the PCHR had to give the housing provider "accus[ed] of discrimination information about the complaint, including [Parker's] name." (Parker Intake Form, Third Am. Compl. p. 40.)  While Parker did not check "Box 2" on the form, where this language appears, he answered the next question on the form, which begins with "[i]f you checked Box 2 above . . . ."  (*Id.*)

[5]     While Parker also alleges the defendants have made clear "they do not consider him a legitimate occupant, and that he is not entitled to engage with the Landlord Defendants or Defendant Mai," (Third Am. Compl. ¶ 49c), he does not indicate how this behavior is tied to any protected activity he engaged in.  And he complains of similar instances which occurred before he engaged in protected activity.  (*Id.* ¶¶ 32–33.)

III

Parker also raises an FLSA retaliatory discrimination claim, but not a plausible one. The FLSA makes it unlawful for "any person" to, in relevant part, "discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). The purpose of this antiretaliation provision "is to ensure that employees can assert their rights without fear of economic retaliation." *Hayes v. Saltz, Mongeluzzi & Bendesky, P.C.*, 652 F. Supp. 3d 537, 541 (E.D. Pa. 2023) (citing *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 268–69 (3d Cir. 2022)).

To state a *prima facie* case of retaliatory discrimination under the FLSA, a plaintiff must allege that they (1) "engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (quoting *Scholly v. JMK Plastering, Inc.*, No. 07-4998, 2008 WL 2579729, 2008 U.S. Dist. LEXIS 49958, at *7–8 (E.D. Pa. June 25, 2008)). Under § 215(a)(3), "[a]n employee engages in protected activity when [the] employee has 'filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." *Id.* (third alteration in original) (quoting 29 U.S.C. § 215(a)(3)).

Parker believes Baritz is retaliating against him for filing an FLSA lawsuit eight years ago. (Third Am. Compl. ¶¶ 16q–r, 57.) Parker and Walt formerly lived in the Fairfax apartment building, where he and Walt also worked a "concierge desk job." (*Id.* ¶ 16a, g–i.) In 2017, Baritz filed an eviction lawsuit against Parker and Walt, which

Parker believes was in retaliation for an FLSA suit Walt and Parker had brought against the Fairfax.  (*Id.* ¶16q–r.)[6]  Parker alleges Baritz has, "assuming he is not using [them] as mere puppets, recruited all other Defendants to join in the retaliation" against him.  (*Id.* ¶ 57.)  But he establishes no causal link between the filing of his FLSA suit and this case.  As Parker sees it, Baritz has masterminded the events relevant to this case to get back at Parker for suing the Fairfax in 2016.  This is a large inferential leap, and Parker does not allege facts that bridge the gap.  This speculation is not sufficient to state a plausible claim.

IV

Next, Parker contends all Defendants discriminated against him because of his race and sex in violation of the FHA.  To state a disparate treatment discrimination claim under the FHA, Parker "must show that 'some discriminatory purpose was a motivating factor behind the challenged action.'"  *White v. Barbe*, 767 F. App'x 332, 334 (3d Cir. 2019) (per curiam) (quoting *Wind Gap*, 421 F.3d at 167–77).  The Court previously dismissed this claim because Parker had not plausibly alleged "circumstances supporting a plausible inference of discrimination."  *Parker*, 2024 U.S. Dist. LEXIS 103314, at *12–18 (quoting *Livingstone v. Haddon Point Manager, LLC*, No. 19-13412, 2020 WL 902218, 2020 U.S. Dist. LEXIS 32029, at *20 (D.N.J. Feb. 25, 2020)).

Parker's latest attempt fails for similar reasons.  He argues the Landlord Defendants offered Walt a lease renewal on worse terms than those offered to nonwhite women.  Parker's prior complaint failed to state a claim under this theory because he

---

[6]     This case is *Parker v. 4247 Fx, Inc.*, No. 16-2710, 2017 WL 2002794, 2017 U.S. Dist. LEXIS 72582 (E.D. Pa. May 12, 2017).

had not "adequately pleaded a comparator who [was] similarly situated but treated better." *Id.* at *17 (quoting *Moody v. Related Co., L.P.*, 620 F. Supp. 3d 51, 56 (S.D.N.Y. 2022)). And "without comparator evidence, nothing else indicate[d] race or sex motivated the defendants to offer Walt a worse apartment for more money." *Id.*

The Third Amended Complaint has the same problem.  Parker alleges Walt was offered a lease renewal for $2,200 a month in December 2022.  (Third Am. Compl. ¶ 41.) At the time, Parker and Walt were paying $1,000 per month to live in apartment 3F. (*Id.* ¶ 41f.)  Parker alleges the "far superior" apartment 4F "was rented at the time to a Hispanic or Asian female" for $1,850 a month, "and was advertised for many months thereafter at $1,900[] a month."  (*Id.* ¶ 41d.)  These allegations do not indicate differential treatment based on race or sex.  The only time apartment 4F was rented by a nonwhite female, she was paying more than Parker and Walt were.  While this tenant paid $1,850 a month for the nicer apartment, Walt and Parker were only paying $1,000 a month.  When Walt was offered a renewal for $2,200 a month, apartment 4F was advertised for $1,900 a month.  While it is not clear why apartment 4F was advertised for less money, Parker alleges no facts plausibly suggesting race or sex was the reason. And although Parker alleges Mai placed "discriminatory rental ads," (*id.* ¶ 64), he alleges no facts indicating how or why these advertisements were discriminatory.

Parker also alleges Mai made the lease renewal offer to Walt behind Parker's back.  (*Id.* ¶ 41b.)  Because the renewal offer "listed only one occupant," Parker views it as an attempted "backdoor eviction," which "would not have happened if [he] were Chinese, or female."  (*Id.* ¶ 41c.)  But this assertion is based only on Parker's opinions and speculation.

Additionally, Parker alleges Walt expressed interest in apartments 2R and 3R, but neither apartment was offered to either of them.  (*Id.* ¶ 41e–f.)  He believes this "would not have happened were they Chinese."  (*Id.* ¶ 41e.)  But he alleges no facts suggesting this is the case, aside from a statement that "Apartment #2R was later rented to minority tenants." (*Id.*)  The bare fact that members of some unspecified minority group rented apartment 2R at some later unspecified time is not, by itself, a plausible indication that Parker or Walt were not offered this apartment because of their race. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" (quoting *Twombly*, 550 U.S. at 556).).

 Parker further claims "All Defendants" discriminated against him "by allowing a Chinese female tenant" to trespass into the apartment on two occasions.  (Third Am. Compl. ¶ 65.)  But as the Court has already explained, this allegation, without more, does not give rise to any inference "that race or sex played any role in these incidents." *Parker*, 2024 U.S. Dist. LEXIS 103314, at *14 (citing *Moody*, 620 F. Supp. 3d at 55–56). Finally, Parker alleges "All Defendants" discriminated against him by offering Walt a one-occupant lease while "previous and other occupants of similar units were offered two-occupant leases."  (Third Am. Compl. ¶ 65.)  But once again, he does not specify the race or sex of these other occupants, much less plead any specific facts indicating any defendant decided to offer Walt a one-occupant lease for any discriminatory reason.

## V

Parker further contends "All Defendants" violated his rights under the ADA. He believes their conduct violated 42 U.S.C. § 12182(b)(2)(A)(iv), (*id.* ¶ 73), part of Title

III of the statute.  *See Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 893 (3d Cir. 2022).  Under Title III, "it is unlawful for a public accommodation to discriminate against an individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations."  *Regents of the Mercersburg College v. Rep. Franklin Ins. Co.*, 458 F.3d 159, 164 (3d Cir. 2006) (citing 42 U.S.C. § 12182(a)).

Fatal to Parker's claim, private plaintiffs "may not obtain monetary damages" under Title III; "only prospective injunctive relief is available." *Anderson v. Macy's, Inc.*, 943 F. Supp. 2d 531, 538 (W.D. Pa. 2013) (citing *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320, 2012 U.S. Dist. LEXIS 83449, at *12 (E.D. Pa. June 14, 2012)); *see also Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 125–26 (3d Cir. 2018).  This claim fails for another reason, since "apartment complexes are not places of public accommodation for the purposes of Title III."  *Lloyd v. Manbel Devco III, LP*, No. 5:23-2261, 2024 WL 811714, 2024 U.S. Dist. LEXIS 33029, at *20 (E.D. Pa. Feb. 27, 2024) (citing *Mahdi Sufi El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 844 (E.D. Pa. 2018)); *see also Estavillo v. Cortese*, No. 23-4032, 2024 WL 2808651, 2024 U.S. Dist. LEXIS 96393, at *8–9 (N.D. Cal. May 30, 2024) (collecting cases).[7]

Parker also alleges retaliation in violation of the ADA, though he does not plead it as a separate count.  (Third Am. Compl. ¶ 73.)  Nor does he specify what "retaliatory

---

[7]     In his responses (ECF Nos. 33, 34), Parker contends that the apartment building is mixed-use and that other residents have conducted business in their apartments.  Even if these allegations were properly pled, in mixed-use facilities "where only part of the facility is open to the public, the portion that is closed to the public is not a place of public accommodation and thus is not subject to Title III of the ADA."  *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1048 (9th Cir. 2008) (citations omitted).

conduct" he is referring to.  As best the Court can tell, Parker is referring to the same

conduct on which he bases his other retaliation claims, specifically Baritz issuing the

notice to vacate after Parker filed his intake form with the PCHR.  But Parker fails to

state a claim because he does not allege he engaged in protected activity under the

ADA, the first element of an ADA retaliation claim.  *EEOC v. Allstate Ins. Co.*, 778 F.3d

444, 448–49 (3d Cir. 2015).  Because the apartment building is not covered by Title III,

his complaint to the PCHR did not concern conduct made unlawful by the ADA.  *See*

*Mahdi Sufi El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 292 (E.D. Pa. 2020)

(explaining that because "residential facilities are not covered" by Title III, filing a

discrimination complaint "did not amount to opposing any act or practice made

unlawful by the ADA or to participating in a proceeding under the ADA" (cleaned up)

(quoting 42 U.S.C. § 12203)).[8]

---

[8]      The FHA, as amended by the Fair Housing Amendments Act of 1988, prohibits housing
discrimination because of a disability. 42 U.S.C. § 3604(f); *see also Revock v. Cowpet Bay West
Condominium Assn.*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*,
514 U.S. 725, 728 n.1 (1995)).

        To the extent Parker's ADA discrimination claim can be construed as an FHA disability
discrimination claim, he fails to state one for the same reason his FHA race and sex discrimination
claims fail.  He has not plausibly alleged any adverse actions were taken because of any
discriminatory motive.  *See White*, 767 F. App'x at 334 ("[A] plaintiff must show that 'some
discriminatory purpose was a motivating factor behind the challenged action'" (quoting *Wind Gap*,
421 F.3d at 176–77).); *Ball v. Hope East of Fifth HDFC Inc.*, No. 1:23-11189, 2024 WL 493977, 2024
U.S. Dist. LEXIS 22329, at *4–6 (S.D.N.Y. Feb 6, 2024) (construing an ADA discrimination claim
involving "allegations of disability discrimination in the context of housing in a private apartment
building," as an FHA claim, and dismissing it because the plaintiff "allege[d] no facts showing how
his disability was at least a motivating factor" in the alleged discrimination).

        Finally, the claim also fails to the extent it can be construed as one for failure to
accommodate under the FHA.  To state such a claim, Parker must "plead enough facts to make out
the three elements set forth in [42 U.S.C.] § 3604(f)(3)(B): refusal, reasonable accommodation, and
necessity/equal opportunity."  *Vorchheimer v. Philadelphia Owners Ass'n*, 903 F.3d 100, 111 (3d Cir.
2018).  Parker does not allege he requested any reasonable accommodation for any specific disability.
*See Allentown Victory Church v. City of Allentown*, 625 F. Supp. 3d 370, 384 (E.D. Pa. 2022), *aff'd*
2024 WL 3439772, 2024 U.S. App. LEXIS 17542 (3d Cir. July 17, 2024) ("[T]o succeed on a
reasonable accommodations claim, a plaintiff must show that the *requested* accommodation was '(1)
reasonable and (2) necessary to (3) afford handicapped persons an equal opportunity to use and enjoy
housing'" (alteration in original) (emphasis added) (quoting *Oxford Invs., L.P. v. City of Philadelphia*,
21 F. Supp. 3d 442, 457 (E.D. Pa. 2014)).).

VI

Finally, Parker alleges the Landlord Defendants engaged in fraudulent and negligent misrepresentation.  He argues the second notice to vacate, issued by Baritz, was "fraudulent because the Landlord had no active rental license for the building." (Third Am. Compl. ¶ 78.)  Parker alleges the Landlord Defendants' rental license expired in February 2023, meaning "they are not legally allowed to collect rent."  (*Id.* ¶ 2, 9.)⁹  He also alleges the notice violated the PCHR order prohibiting the Landlord Defendants from collecting rent.  (*Id.* ¶¶ 36–37.)  This notice was allegedly "rejected as premature by the Eviction Diversion Program."  (*Id.* ¶ 37.)

To state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a representation; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or reckless disregard as to whether it is true or false; (4) with the intent to mislead another person into relying on it; (5) justifiable reliance; and (6) an injury proximately caused by the reliance."  *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 645–46 (Pa. 2021) (quoting *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).  A negligent misrepresentation claim requires allegations of "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation."  *Id.* at 646 (citing *Bortz*, 729 A.2d at 561).

---

⁹     In Philadelphia, a landlord with an inactive rental license may not collect rent or recover possession of the leased premises.  *O.H. Bel Air Partners LP v. Hinton*, 296 A.3d 1173, 1174 & n.2, 1176–78 (Pa. Super. Ct. 2023); Phila. Code § 9-3901(4)(e).

These claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 484 (E.D. Pa. 2016) (explaining that Rule 9(b)'s heightened pleading standard applies to fraudulent and negligent misrepresentation claims).

Parker apparently believes the notice to vacate constituted a false representation that the Landlord Defendants intended to evict him and Walt. As he sees it, they threatened an eviction knowing they were prohibited from following through. But he does not allege facts sufficient to suggest this is the case. Instead, he infers this must be the case since the Landlord Defendants were not allowed to evict him until they renewed their rental license. But this is all speculation. Just because the Landlord Defendants were not allowed to evict does not mean that they did not intend to. Moreover, Parker's allegations about the Eviction Diversion Program cut the other way. Landlords in Philadelphia cannot evict tenants unless they have participated in the program first. Phila. Code § 9-811(2)(b). Because it appears the Landlord Defendants participated in this program, the Third Amended Complaint does not indicate the Landlord Defendants intended to threaten Parker or Walt with an eviction they never planned to pursue.

Aside from his FHA retaliation claim, all claims in the Third Amended Complaint fail. Parker received an opportunity to cure the defects in his Second Amended Complaint. Further amendment would be futile at this point. *See Jones v.*

14

*Unknown D.O.C. Bus Driver & Transp. Crew.*, 944 F.3d 478, 483 (3d Cir. 2019)

(amendment by *pro se* litigant was futile when he "already had two chances to tell his

story").  Counts II, III, IV and V are dismissed with prejudice.


An appropriate Order follows.

BY THE COURT:



***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.