## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REC'D OCT - 8 2024

| | | |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| Plaintiff | : | |
| v. | : | **Case No: 23-3999-GJP** |
| **Ronald Lee *et al*,** | : | |
| Defendants | : | |

## PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

Gordon Roy Parker ("Gordon"), Plaintiff in the above-styled action, submits this Motion for Leave to file a Fourth Amended Complaint, and in support thereof, submits the following:

### I.    INTRODUCTION

1.    The Third Amended Complaint covers conduct only through its filing date of June 27, 2024.

2.    Defendants' (other than Baritz) conduct is ongoing, and not covered by the Third Amended Complaint.

3.    Plaintiff – who was dealing with severe health issues in June, 2024 – incorrectly pled a disability claim under the Americans With Disabilities Act (ADA), due to his mistaken belief that, as in employment, the ADA covered disability discrimination in housing.

4.    The same underlying facts in the Third Amended Complaint clearly give rise to a disability claim under the FHA.  This Court should have construed Count IV as an FHA claim and amended it ***sua sponte***, or given Plaintiff leave.

5.    Plaintiff has included his proposed changes for a Fourth Amended Complaint.

6.    Plaintiff is clearly a ***private attorney general***, part of our government's scheme to offload fighting wrongdoing to citizens "on the front lines," in this case as a tenant, under threats of invasion of privacy through discovery, dismissal by unsympathetic courts, and further retaliation by landlords if left defenseless.  To this extent, it is clearly in the public interest to allow yet another Amended Complaint, particularly since one Amendment resulted from Defendants' motion to dismiss being targeted at a moot pleading.

7.    Numerous facts in the Third Amended Complaint, and in Defendants' motions to dismiss (including the earlier Complaints), support Plaintiff's position:

a.    Defendants have refused to acknowledge Plaintiff's right to live with his brother, Walter Parker ("Walt"), as Walt's caregiver.

b.    Defendants have stigmatized and punished Plaintiff for conduct caused either by his disability, Walt's disability, or Plaintiff's role as Walt's primary caregiver.  This includes, but is not limited to:

1) Allowing other tenants unlawful entry into units BR-2 ("the Basement") or 3-F ("the Apartment"), during one of the many floods in the basement, and after the Apartment's toilet overflowed in November, 2022, invading his privacy and further stigmatizing him and Walt by portraying them in a false light based on the condition of the Apartment with water damage.

2) Stigmatizing and punishing Plaintiff and Walt for one or more noise complaints caused by their relocation from the Basement to the Apartment.  Plaintiff is aware of only one noise complaint, but any such complaint was the result of the long distance between his bedroom and Walt's sleeping area, Plaintiff's lack of mobility, requiring him to call out to his brother, who is now his paid caregiver, and the Apartment's location, from which sound carried to other areas of the Building, while the Basement was virtually soundproofed, with noise contained within.

       c.  Defendants have refused to fix a broken heater, and also refused to provide Plaintiff or Walt with a mailbox key for box 3F, forcing Walt to get his mail from BR-2, and Plaintiff to divert his mail to the Broad Street Mission, his address of record for this case.

       d.  Defendants offered Walt, but not Plaintiff, a lease renewal in December, 2022, and specified in the proposed lease that residency be limited to one occupant, also in violation of the FHA's disability provisions.

     8.     When The Lee Defendants hired Defendant Baritz, they became privy to their counselor's extensive knowledge of Plaintiff's and Walt's rental history at the Fairfax, and his litigation history, which made his bipolar a matter of public and private record, the latter including numerous details from his personal life not otherwise available to Defendants, but for their retention of Defendant Baritz.

     9.     Defendants have called this action frivolous, and made an averment stating it is entitled to attorney fees.  While Plaintiff believes that the surviving claim defeats that averment, this Court should also recognize the validity and strength of the FHA disability claim that was not pled solely because of Plaintiff's inexperience as a *pro se*.  That Plaintiff has filed lawsuits in the past, worked as a paralegal, and is familiar with terminology still does not make him a practicing member of the Bar, who would not have made this oversight.

     10.   Absent leave to file a fourth amended complaint, a new action would need to be filed to cover new conduct, which includes ongoing disability discrimination.  Such an action would focus on the ongoing FHA disability violations, including those which would be revealed by discovery in this case, particularly given the Defendants already signaling that their "good cause" for evicting Plaintiff was the direct and proximate result of his and Walt's disabilities.

## II.    PROPOSED FOURTH AMENDED COMPLAINT (REVISIONS)

Plaintiff proposes that the following additional paragraphs be added to the end of the Third Amended Complaint:

### COUNT VII: FAIR HOUSING ACT VIOLATION DISABILITY DISCRIMINATION (DEFENDANTS LEE, LEE, and TRUST)

85.    Plaintiff incorporates by reference, the entire contents of paragraphs 1-84, as if set forth verbatim herein.

86.    Defendants have refused to acknowledge Plaintiff as a legitimate occupant of the Apartment, as Walt's fulltime caregiver, by repeatedly claiming he is living in the Apartment "without permission."

87.    Attached as Exhibit E is the *Fair Housing Guide To Reasonable Accommodations and Modifications*, from the Housing Equality Center of Pennsylvania.  Of particular relevance are the following:

**Poor Credit Record, Rental History, or Negative References Due to Disability**

In some cases, making an exception to a credit score requirement may be a reasonable accommodation if the negative credit can be shown to be directly due to the person's disability and the individual is able to demonstrate that they are otherwise financially qualified to rent.  A person may not have previous rental history due to a disability. A reasonable accommodation can be requested to ask the housing provider to consider references from a social worker or employer.

***If the reason for a negative reference is based on disability-related behavior***, the individual can request a reasonable accommodation to disregard the negative reference or to consider mitigating circumstances. Similarly, if an individual has a criminal record due to conduct that resulted directly from a mental health disability or addiction, and can demonstrate that they have since received treatment or medication that has eliminated the behavior that led to the criminal conduct, the individual can request a reasonable accommodation to make an exception to the provider's ordinary criteria regarding criminal background.

Example: If a person becomes disabled and can no longer work due to their disability, that person may acquire a negative credit report for late or unpaid bills. Later, this individual may be granted Social Security Disability Income and is no longer reliant on employment for income. A reasonable accommodation to a policy of rejecting tenants with poor credit records can be requested if the applicant is able to show that the poor credit record was a direct result of the

disability, that their ability to pay no longer depends on employment, and that loss of income to an inability to work is unlikely to reoccur. (p.23)

**Permitting a Home Health Aide or Live-in Personal Care Attendant**

An individual with a disability may require a visiting home health aide or a live-in personal care attendant. The tenant can request a reasonable accommodation to permit the live-in personal care attendant without payment of extra rent or inclusion on the lease. A reasonable accommodation request could also be made to request a transfer from a one-bedroom to a two-bedroom unit to accommodate a live-in personal care attendant. A tenant can also request a waiver of any guest fee or parking fee for a live-in care attendant or home health care aide. (p. 26)

88.    Defendants conduct is ongoing: they refuse to establish a dialogue regarding disability accommodations as Walt's caregiver, including as a second occupant of the Apartment without inclusion on the lease.

89.    Defendants are well aware of, or should have been well aware of, Plaintiff's and Walt's disabilities, having been put on notice on a telephone call of June 3, 2022 between Plaintiff and Joanna Lee (Defendant Ron Lee's wife), and through their retention of Defendant Baritz, who had full access to both Plaintiff and Walt's rental and litigation history.

90.    Defendants' lease renewal offer to Walt in December, 2022 specified one occupant in the Apartment, in further denial of any caregiver for Walt, in this case Plaintiff.

91.    Defendants have further continued to withhold a mailbox key for the Apartment, making it impossible for Plaintiff to establish residency by getting his mail at this domicile.

92.    Defendants' conduct, as set forth hereinabove, constitutes an ongoing violation of the disability provisions of the Fair Housing Act, 42 USC §3601 *et seq.,* specifically 42 USC §3604(f), for unlawful discrimination (including but not limited to disparate impact on the single-occupant lease), and 42 USC §3604(f)(3)(B), for failure to make reasonable accommodations, such as not stigmatizing Plaintiff or Walt for conduct secondary to their disabilities, or secondary to their involuntary relocation from the Basement, where noise does not travel enough to be heard, to the Apartment, where it does.

93.   For the violations set forth in paragraph 92 above, Plaintiff is entitled to relief under 42 USC §3613(c), and states this claim for relief on that basis.

94.   Plaintiff is entitled to compensatory damages in an amount to be determined at trial, punitive damages, injunctive relief sufficient to terminate the actionable conduct, costs of suit, including any reasonable attorney fees (none so far), and any other relief this court deems just and proper to make Plaintiff whole.

### III.   CONCLUSION

Plaintiff is seeking to add a single count that won't impact the case management at all, and which should be added, in the interest of trying this case on the merits, and judicial efficiency.  For these reasons, the instant motion should be **granted**.

This the 3rd day of October, 2024

**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131
*e-mail or text preferred contact

**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER,** Plaintiff<br><br>v.<br><br>**Ronald Lee** *et al,* Defendants | : : : : : : : : : : : : | **Case No: 23-3999-GJP** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT**

Gordon Roy Parker ("Gordon"), Plaintiff in the above-styled action, submits this Memorandum of Law in support of the instant motion.

## I.   INTRODUCTION

The Landlord Defendants in this case – who all now live in San Diego, but for their attorney, Defendant Baritz – are fighting for the right to control their *absentee* rental property, located at 1011 Cherry Street (a/k/a 132 North 10th Street).  By contrast, Plaintiff is ***fighting for his life***, the expectancy for which would plummet to nearly zero without the housing stability that has kept him alive for the past several years with four terminal illnesses: stage 3 COPD, stage 1A-2 lung cancer (NSCLC), Type 2 Diabetes, and End-Stage Liver Disease (ESLD).  Indeed, half of the people diagnosed with ESLD on the same day as Plaintiff are already dead, while Plaintiff has remained surprisingly functional, but only indefinitely.

While the FHA retaliation claim survived Defendants' motion to dismiss, an incorrectly pled claim under the Americans With Disabilities Act (ADA) did not.  The underlying facts pled in the Third Amended Complaint, however, clearly give rise to a disability claim under the FHA.  As Plaintiff is

proceeding ***pro se***, this Court should have applied liberal construction to this pleading and treated it as an FHA disability claim.

Additionally, the Lee Defendants have continued their egregious, actionable conduct against Plaintiff, necessitating either amendment or a new filing.  In the interest of judicial efficiency, Plaintiff would prefer leave to amend, though he is prepared to spend another $500.00 from his limited resources or so filing and serving a new action.

## II.   **LEGAL STANDARD**

### A.   **Leave To Amend A Federal Complaint (Rule 15(a)(2) and Rule 16(b)(4))**

Leave to amend should be freely granted even after the Rule 16 conference, as the Federal Rules of Civil Procedure prioritize resolving disputes on their merits rather than procedural technicalities. Under Rule 15(a)(2), courts are instructed to "***freely give leave when justice so requires***," with the Supreme Court emphasizing that absent undue delay, bad faith, dilatory motive, or prejudice to the opposing party, the amendment should be allowed. See <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Moreover, courts have recognized that the liberal amendment policy remains applicable even after the Rule 16 scheduling order, though the moving party must satisfy the "good cause" standard of Rule 16(b)(4). This standard focuses on the diligence of the party seeking amendment rather than the prejudice to the opposing party. See <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992). Therefore, where the movant demonstrates diligence and the amendment is necessary to ensure a fair trial on the merits, courts should continue to permit amendment after the Rule 16 conference.

Also as noted previously, ***pro se*** pleadings deserve liberal construction, in this case construing Plaintiff's dismissed ADA claims as an FHA retaliation claim that is ongoing and still valid.  Plaintiff is not an attorney, nor does he play one on TV, and while he may exhibit some competence in representing

himself, that does not put him on anything resembling equal footing with a practicing member of the Bar.

### B. **Fair Housing Disability Claims**

The Fair Housing Act (FHA), 42 U.S.C. §3601 *et seq.*, prohibits discrimination in housing based on disability, including refusing to make reasonable accommodations for individuals with disabilities. A plaintiff bringing a disability discrimination claim under the FHA must establish three elements:

1. **The Plaintiff is Disabled**: Under the FHA, a "disability" is defined as a physical or mental impairment that substantially limits one or more major life activities. This includes, but is not limited to, conditions such as mobility impairments, mental health conditions, and chronic illnesses. See 42 U.S.C. § 3602(h); Hollis v. Chestnut Bend Homeowners Ass'n, 760 F.3d 531, 539 (6th Cir. 2014).

2. **The Defendant Knew or Should Have Known of the Disability**: The plaintiff must demonstrate that the housing provider had knowledge of their disability or that the disability was reasonably apparent. This can be achieved either by direct notification or by the visibility of the plaintiff's condition. Schwarz v. City of Treasure Island, 544 F.3d 1201, 1219 (11th Cir. 2008).

3. **A Reasonable Accommodation was Necessary and Denied**: The plaintiff must show that a reasonable accommodation was both necessary and requested for the individual to have an equal opportunity to use and enjoy their dwelling. The requested accommodation must be feasible and not pose an undue financial or administrative burden on the housing provider. In determining whether a request is "reasonable," courts apply a case-by-case analysis. *Bronk v. Ineichen*, 54 F.3d 425, 429 (7th Cir. 1995).

Under the FHA, "reasonable accommodation" encompasses adjustments such as allowing service animals despite "no-pet" policies, modifying policies that would otherwise exclude individuals

with disabilities, or allowing structural modifications to the dwelling, such as ramps for wheelchair access. The landlord must grant accommodations unless doing so would result in undue hardship or fundamentally alter the nature of the housing provider's business. <u>Giebeler v. M&B Assocs.</u>, 343 F.3d 1143, 1155 (9th Cir. 2003).

Furthermore, plaintiffs must exhaust all reasonable alternative accommodations before pursuing litigation. However, ***<u>a housing provider's refusal to engage in an interactive process to discuss potential accommodations can be considered a failure to meet the FHA's requirements</u>***. <u>Jankowski Lee & Assocs. v. Cisneros</u>, 91 F.3d 891, 895 (7th Cir. 1996).

If the plaintiff can demonstrate these elements, they may be entitled to relief, including injunctive measures, damages, and attorney's fees under 42 U.S.C. § 3613(c).

### III.  <u>ARGUMENT</u>

**A.   <u>Judicial Efficiency Supports Leave To Amend</u>**

A newly filed action that covers ongoing FHA disability discrimination would wind up in this Court with Your Honor as a related case; the only difference would be extra expenditures on the part of all parties.  Plaintiff is attempting, with this motion, to mitigate those costs.

**B.   <u>The Facts Support Amendment To The Complaint</u>.**

1.  **<u>Plaintiff and Walt Are Disabled</u>.**

As Defendant Baritz was made aware in the Fairfax lawsuit, Walt is neurodivergent, and has ADHD, which necessitates mild supervision, in this case with Plaintiff as his live-in caregiver, to help him navigate the world when he occasionally runs into difficulty; he is generally fine, but these interventions are crucial for keeping him "on track."

As for Plaintiff, Defendants are also well aware of his conditions, as previous pleadings and Defendant Baritz's previous representation of the <u>Fairfax</u>, plus Plaintiff's litigation history, make clear.  This is a recent list of his ailments from his Temple online portal:

**Current Health Issues**

Please review your health issues and verify that the list is up to date. Call 911 if you have an emergency.

| | | |
|---|---|---|
| Decompensated hepatic cirrhosis<br>Started 12/8/2021<br>(i) Learn more<br>🗑 Remove | Asthma<br>Started 12/8/2021<br>(i) Learn more<br>🗑 Remove | Chronic airway obstruction<br>Started 12/8/2021<br>(i) Learn more<br>🗑 Remove |
| Bipolar disorder<br>Started 12/8/2021<br>(i) Learn more<br>🗑 Remove | Hernia<br>Started 3/5/2022<br>(i) Learn more<br>🗑 Remove | Screen for colon cancer<br>Started 2/22/2022<br>(i) Learn more<br>🗑 Remove |
| Ambulatory dysfunction<br>Started 1/18/2024<br>(i) Learn more<br>🗑 Remove | Malignant neoplasm of upper lobe of left lung<br>Started 8/8/2024<br>(i) Learn more<br>🗑 Remove | Cirrhosis<br>Started 9/10/2024<br>(i) Learn more<br>🗑 Remove |
| Cataract of both eyes<br>Started 6/13/2018<br>(i) Learn more | Acne<br>Started 6/20/2017<br>(i) Learn more | Edema of both legs<br>Started 8/4/2017<br>(i) Learn more |
| Abdominal hernia<br>Started 5/20/2018<br>(i) Learn more | Depression<br>Started 6/20/2018<br>(i) Learn more | Red blood cell breakdown<br>Started 7/26/2018<br>(i) Learn more |
| Thrombocytopenia<br>Started 7/26/2018<br>(i) Learn more | Mental health problem<br>Started 11/12/2018<br>(i) Learn more | Housing problems<br>Started 11/12/2018<br>(i) Learn more |
| Elevated transaminase measurement<br>Started 11/13/2018<br>(i) Learn more | Excessive bile pigments (bilirubin) in the blood<br>Started 11/13/2018<br>(i) Learn more | Decrease of all blood cells<br>Started 11/13/2018<br>(i) Learn more |
| Jaundice<br>Started 11/13/2018<br>(i) Learn more | Elevated glucose<br>Started 11/13/2018<br>(i) Learn more | Decreased white blood cell count<br>Started 11/14/2018<br>(i) Learn more |
| Type 2 diabetes<br>Started 8/3/2019<br>(i) Learn more | Nail discoloration<br>Started 8/7/2019<br>(i) Learn more | Toothache<br>Started 8/7/2019<br>(i) Learn more |
| Liver disease<br>Started 8/16/2019<br>(i) Learn more | Cellulitis of oral soft tissues<br>Started 8/16/2019<br>(i) Learn more | Jaw pain<br>Started 8/16/2019<br>(i) Learn more |
| Skin inflammation<br>Started 9/28/2020<br>(i) Learn more | Urinary frequency<br>Started 8/28/2020<br>(i) Learn more | Abrasion<br>Started 9/17/2021<br>(i) Learn more |
| Bacterial skin infection of leg<br>Started 9/17/2021<br>(i) Learn more | Chronic skin ulcer, limited to breakdown of skin<br>Started 8/17/2021<br>(i) Learn more | Elevated blood sugar level<br>Started 11/2022<br>(i) Learn more |

As the above clearly indicates, Plaintiff is not far removed from ***walking dead*** status.

Walt is now his paid caregiver as well.  Additionally, Plaintiff was fighting cancer and barely functional when drafting the Third Amended Complaint, which prevented him from properly adding the claim.

2. **Defendants either knew or should have known that Plaintiff and Walt are disabled.**

Defendant Baritz has access, through the Fairfax lawsuit, to highly privileged private information that no other attorney could have given to these Defendants, who were also made aware of Walt's disability on the phone call of June 3, 2022, and Plaintiff's through his litigation history.

3. **Defendants have refused to engage Plaintiff with regard to reasonable accommodations.**

The Defendants in this case have made no attempt to engage Plaintiff in any discussions regarding accommodations, and in fact refuse to acknowledge him as a valid occupant/tenant.  This meets the standard set forth in Janowski Lee for establishing retaliation.

4. **The conduct is ongoing**.

As of this writing, Plaintiff still lacks heat or a mailbox key.  While this is retaliatory and covered by the existing claim, it also gives rise to the FHA disability claim Plaintiff seeks to add.

5. **The discrimination itself is the harm.**

Under Alexander v. Riga, 208 F.3d 419 (3d Cir. 2000), "the discrimination itself is the harm," and no further injury or damages need be proven at trial to prevail.

## IV.  CONCLUSION

For the foregoing reasons, the instant motion should be **granted.**  If it is denied, Plaintiff will commence with a new action, absent a finding that this amendment would be futile, in which case he will appeal, when the time comes.

This the 3rd day of October, 2024

*[signature]*
_____
**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,** <br> Plaintiff <br><br> v. <br><br> **Ronald Lee** *et al,* <br> Defendants | **Case No: 23-3999-GJP** |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, Plaintiff in the above-styled action, hereby attest that I have served a copy of

the foregoing **Plaintiff's Motion For Leave To File Fourth Amended Complaint,** on the following

parties (and ex-parties, as a courtesy), by **regular mail** (with follow up by e-mail):

Aaron E. Moore, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin PC
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorney for Defendants Caanan and Mai*

Adam M. Barsky, Esq.
KBK Law Group
100 South Broad, #1205
Philadelphia, PA  19110
*Attorney for all other defendants.*

This the 3rd day of October, 2024

_____
**Gordon Roy Parker, Pro Se**
315 South Broad Street, #0106
Philadelphia, PA  19107
gordonroyparker@gmail.com
(215) 951-4131

# IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYVLANIA

|  |  |
|---|---|
| **GORDON ROY PARKER,**        Plaintiff<br><br>       v.<br><br>**Ronald Lee *et al*,**        Defendants | **Case No: 23-3999-GJP** |

## <u>ORDER</u>

**AND NOW,** this _____ day of October, 2024, in consideration of **Plaintiff's Motion For Leave To File A Fourth Amended Complaint,** and all responses thereto, the motion is **granted**.  Judgment is awarded to Plaintiff, with damages to be determined at a later time.

_____
J.

# EXHIBIT E



# FAIR HOUSING GUIDE *to*

# Reasonable Accommodations and Modifications



**HOUSING EQUALITY CENTER** of Pennsylvania

*Fair Housing... **It's Your Right!***

The Housing Equality Center of Pennsylvania is a nonprofit organization dedicated to advancing fair and equal access to housing opportunities for all Pennsylvanians. We provide education on fair housing rights to consumers and organizations serving members of the protected classes and offer training and technical assistance to private and nonprofit housing providers and local governments. The Housing Equality Center provides fair housing counseling and testing investigation services for victims of housing discrimination in the City of Philadelphia and in Bucks, Chester, Delaware, Lehigh, Montgomery, and Northampton Counties in Pennsylvania.

If you have found this manual helpful and would like to support efforts to assist residents of Pennsylvania regarding their fair housing rights, please consider making a contribution to the Housing Equality Center by visiting equalhousing.org and clicking on **Donate Now.**



info@equalhousing.org
equalhousing.org

**This manual is not intended as a substitute for proper legal advice.**
The Housing Equality Center cannot be held responsible for errors, omissions, or changes to the law.

Published February, 2020

Copyright © 2020 Housing Equality Center of Pennsylvania. All rights reserved.



Funding under a grant from the U.S. Department of Housing and Urban Development supported the work that provided the basis for this publication. The substance and findings of the work are dedicated solely to the public. The author and publisher are solely responsible for the accuracy of the statements and interpretations contained in this publication. Such interpretations do not necessarily reflect the views of the Federal Government.

# FAIR HOUSING GUIDE *to*

# Reasonable Accommodations and Modifications


HOUSING
EQUALITY
CENTER
of Pennsylvania

# Table of Contents

**Introduction**     **5**

**Fair Housing Protections
for People With Disabilities**     **6**

The Fair Housing Act     6

Additional Protections for People with Disabilities     6

Types of Dwelling and Housing Transactions Covered by the Fair Housing Act     6

State and Local Fair Housing Laws     7

Exemptions to the Fair Housing Act     7

Definition of Disability     7

Recognizing Disability Discrimination Under the Fair Housing Act     8

**Reasonable Accommodations and Modifications
Under the Fair Housing Act**     **9**

Reasonable Accommodations for People with Disabilities     9

Reasonable Modifications for People with Disabilities     9

Paying for Reasonable Modifications     9

**Reasonable Accommodation and Modification
Request and Negotiation Process**     **10**

How Should a Resident or Prospective Resident Request
a Reasonable Accommodation or Modification?     10

Can Housing Providers Require Specific Forms for Reasonable Accommodation
and Modification Requests?     10

When Must a Housing Provider Allow a Reasonable Accommodation or Modification?     10

What is Reasonable?     11

What Questions may a Housing Provider Ask a Prospective Tenant with Disabilities?     11

When can a Housing Provider Request Verification of Disability and
Need for the Requested Accommodation or Modification?     12

What if a Housing Provider Believes a Request is Unreasonable?     12

Reasonable Accommodation/Modification Request Evaluation "DANCE"     13

Can a Housing Provider Charge Extra Fees and Deposits or Require Conditions?     13

What if a Housing Provider Believes a Person Would Pose a Direct
Threat to Others or to Property?     13

Common Accommodation and Modification Mistakes by Housing Providers     14

## Writing Reasonable Accommodation or Modification Request Letters — 15

SAMPLE LETTER: Reasonable Accommodation Request — 16

SAMPLE LETTER: Reasonable Modification Request — 17

## Writing Reasonable Accommodation or Modification Verification Letters — 18

SAMPLE VERIFICATION LETTER (on professional letterhead) — 19

## Assistance Animals — 20

Insurance Policy Restrictions on Dog Breeds and Animal Types — 21

Online Emotional Support Animal Registration — 21

The Pennsylvania Assistance and Service Animal Integrity Act — 22

## Reasonable Accommodations When Applying for Housing — 23

Assisting with Application — 23

Providing Application or Lease in Large Print — 23

Poor Credit Record, Rental History, or Negative References Due to Disability — 23

Co-signors or Alternative Income — 24

Waiver of In-Person Application — 24

## Reasonable Accommodations During Tenancy — 25

Reserved Parking — 25

Reasonable Accommodations for Individuals Who Engage in Hoarding — 25

Late Rental Payments Without a Fee — 25

Rental Payment Reminders — 26

Including a Case Manager or other Professional Support Service on all Correspondence — 26

Transfer to a More Accessible Unit or Early Termination of Lease — 26

Permitting a Home Health Aide or Live-in Personal Care Attendant — 26

Multiple Chemical Sensitivities — 27

Smoking — 27

Wheelchairs and Electric Scooters — 27

Apartment Damages — 27

Notice Before Entering Apartment — 28

Noise Violations — 28

Eviction — 28

## Competing Disability Needs                                          29

## Stipulations for Reasonable Modifications and Modification Reversals   30
Escrow for Reversal of Reasonable Modifications in Rental Properties    30

## Accessibility and New Construction Under the Fair Housing Act        31
Reasonable Modification in New Construction of Single Family Homes      31

## Disability Rights in Federally Subsidized Housing and in Public Accommodations   32

## Reasonable Accommodations in Federally Funded Housing               34
Physical Modifications                                                 34
Housing Voucher Extension                                              34
Payment Standards                                                      34
Alternative Housing Types                                              35
Housing Size                                                           35
Housing Inspection                                                     35

## Filing a Fair Housing Discrimination Complaint                      36

## Additional Resources                                                37
For More Information on Reasonable Accommodations and Modifications    37
Funding Accessibility Modifications                                    37
Other Resources                                                        38

# INTRODUCTION



Fair housing is the right of individuals and families to access the housing of their choice without being subjected to discrimination. Although housing discrimination against people with disabilities was outlawed by an amendment to the Fair Housing Act in 1988, both locally and nationwide over half of all incidents of housing discrimination occur on the basis of disability. Housing discrimination against people with disabilities often takes the form of housing providers refusing to permit reasonable accommodations or reasonable modifications that allow individuals with disabilities an equal opportunity to use and enjoy their dwelling. This guide was developed to assist in better understanding these rights under the Fair Housing Act and to increase the ability to recognize the signs of housing discrimination.

# FAIR HOUSING PROTECTIONS FOR PEOPLE WITH DISABILITIES

## The Fair Housing Act

The Fair Housing Act Title VIII of the Civil Rights Act of 1968, as amended, is known as the Fair Housing Act. The Fair Housing Act prohibits discrimination in housing on the basis of:

- **Race**
- **Color**
- **Religion**
- **National origin**
- **Sex**
- **Disability**
- **Familial status** (households with children under 18 in a household, pregnant women or anyone in the process of adopting or securing legal custody of a child).

It is against the law to do any of the following based on a protected class:

- Refuse to rent or sell housing
- Refuse to negotiate housing
- Make housing unavailable or deny that housing is available
- Set different terms, conditions or privileges for the sale or rental of housing, a mortgage, home loan, home insurance or any other housing transaction
- Advertise in a discriminatory manner
- Threaten, coerce or intimidate anyone exercising a fair housing right or assisting others in exercising those rights

## Additional Protections for People with Disabilities

Individuals with disabilities are entitled to additional protections under the Fair Housing Act. These protections include:

- A right to reasonable accommodations and reasonable modifications when necessary to provide equal opportunity to use and enjoy a dwelling
- Housing providers are not permitted to inquire into the nature or extent of a person's disability
- Design and construction requirements, which provide a basic level of accessibility in certain types of new multifamily construction

## Types of Dwelling and Housing Transactions Covered by the Fair Housing Act

The Fair Housing Act is a very broad law covering many types of housing and housing related transactions. In addition to apartments and homes for rent or for sale, the Fair Housing Act's protections also apply to:

- Public housing
- Condominiums and homeowners associations
- College and university dormitories
- Nursing homes
- Mobile home parks
- Group homes for people with disabilities
- Sober homes and addiction recovery homes
- Some homeless shelters
- Mortgage lending
- Homeowners and renters insurance
- Appraisals
- Zoning and other municipal ordinances

Fair Housing Protections

6

## State and Local Fair Housing Laws

The Pennsylvania Human Relations Act (PHRA) offers additional protections beyond the federal Fair Housing Act. The PHRA makes it illegal to discriminate in housing related transactions on the basis of age (over 40) and for being a user, handler, or trainer of an assistance animal for people with disabilities.

Local fair housing ordinances may expand protections based on sexual orientation, gender identity, marital status, source of income and other protected classes. Check with your city, township, or borough to see if there are additional protected classes where you live.

## Exemptions to the Fair Housing Act

- Under federal law, owner occupied buildings with four or fewer rental units are exempt from the Fair Housing Act when the owner does not use the services of a broker or agent. However, the Pennsylvania Human Relations Act establishes that only owner occupied buildings with two or fewer units are exempt from state fair housing laws.

- Single family housing sold or rented without the use of a broker or agent is exempt from the Fair Housing Act if the private individual owner does not own more than three such single family homes at one time.

- Housing operated by religious organizations and private clubs may limit occupancy to members as long as membership does not exclude individuals based on their race or national origin.

- Qualified senior housing is except from the familial status provision of the Fair Housing Act, but must comply with the Housing for Older Persons Act's (HOPA) definition of either 80% of households having at least one resident age 55 and up or 100% of residents being age 62 and up.

Even if a property is exempt from the Fair Housing Act, there is never an exemption for discriminatory statements or advertising in a discriminatory manner.

## Definition of Disability

A disability is defined by the Fair Housing Act as a **"physical or mental impairment that substantially limits one or more of a person's major life activities."** Major life activities can include caring for one's self, walking, seeing, hearing, speaking, breathing, learning, and working. If you require the use of a walker, a wheelchair, a service animal or a personal-care attendant, you are protected under the law against housing discrimination.

The definition of disability under the Fair Housing Act also includes people who have a **history of an impairment** and people who are **perceived** as having an impairment (even if they are not actually disabled). Disabilities may include mental or emotional illness, difficulties associated with aging, HIV/AIDS, or addiction.

Those recovering from drug addiction who have successfully completed a treatment program are covered under the law. Individuals who are currently using illegal drugs are **not** protected. If you are discriminated against because you are associated with someone who has a disability, you are also protected under the law.



Fair Housing Protections

# Recognizing Disability Discrimination Under the Fair Housing Act

The following are some examples of discriminatory treatment that indicate a violation of the Fair Housing Act:

- A landlord telling a prospective tenant that they don't want someone with a disability living on their property

- A rental agent indicating that an apartment is not available to a prospective tenant with a disability when one or more units are in fact available

- Charging double the amount of the security deposit because a tenant uses a wheelchair or a scooter

- Requiring that prospective residents are capable of "independent living"

- Requiring people with mobility impairments to live on ground floor units

- Banning people with disabilities from common use areas including pools and fitness facilities

- Responding slower or not at all to maintenance requests for people with disabilities

- Attempting to evict a tenant because they request a reasonable accommodation or modification or file a fair housing complaint

- Refusing to allow a tenant with post-traumatic stress disorder to have an emotional support animal because the apartment complex does not allow pets

- Refusing to allow a tenant with impaired manual dexterity to replace locks or door handles with ones that are usable

- Requiring that a homeowner in a condominium complex install a ramp that meets certain visual or aesthetic standards

- Refusing to renew the lease of a person whose disability related symptoms have become more severe during the lease term

- Failing to respond to a reasonable accommodation or modification request

- Charging a pet fee for an assistance animal

- Asking if a prospective tenant has a disability, takes medication, has ever been hospitalized, or has ever been in a drug or alcohol rehabilitation program

- Asking to see a resident's medical records or speak to their doctor for more details about their condition

- Making threatening or intimidating comments to a person with a disability

- Failing to respond to other tenants harassing someone because of their disability

- Disclosing a tenant's disability to other residents

8

# REASONABLE ACCOMMODATIONS AND MODIFICATIONS UNDER THE FAIR HOUSING ACT

## Reasonable Accommodations for People with Disabilities

A reasonable accommodation is a change in rules, policies, practices, or services that enables a person with a disability an equal opportunity to use and enjoy a dwelling.

Examples of reasonable accommodations include:

- Assigning a person with a disability a reserved parking spot near their unit even though tenant parking is generally on a first come, first served basis
- Allowing a person with a disability to keep an assistance animal despite a "no pets" policy
- Allowing an assistance animal with no fees
- Allowing a disabled tenant who receives disability checks later in the month to pay rent after the 1st of the month without a late fee
- Providing a lease application in large print
- Permitting a live-in personal care attendant
- Allowing a transfer to a first floor or a more accessible unit or community

## Reasonable Modifications for People with Disabilities

A reasonable modification is a change in the physical structure of a dwelling that enables a person with a disability an equal opportunity to use and enjoy that dwelling. In many cases, individualized modifications to a dwelling enable a person with a disability to live in a space that they would otherwise be physically unable to live in. This includes the interior and exterior of a building or a unit, including public and common-use areas.

Examples of reasonable modifications include:

- Installing a ramp access to the entrance of the dwelling
- Installing visual or tactile alert devices
- Widened doorways in unit
- Installing grab bars in the bathroom or at the entrance into unit
- Removal of below-counter cabinets
- Installation of a fence or awning
- Replacing door handles with levers

## Paying for Reasonable Modifications

**Generally the expense of reasonable modifications is the responsibility of the tenant.** However, if the housing is federally subsidized (such as a Public Housing Authority), then the federally funded housing project may be required to pay for reasonable modifications requested by a disabled tenant. See **Reasonable Accommodations in Federally Funded Housing** for more information.

Reasonable Accommodations & Modifications

# REASONABLE ACCOMMODATION AND MODIFICATION REQUEST AND NEGOTIATION PROCESS

## How Should a Resident or Prospective Resident Request a Reasonable Accommodation or Modification?

- A person with a disability must notify the housing provider if they need a reasonable accommodation or reasonable modification. It is not the responsibility of a housing provider to offer or suggest an accommodation or modification to a resident or prospective resident, even if they are aware of the disability or disability related need.

- Reasonable accommodation and modification requests can be made verbally, but it is best to make the request in writing so that there is no misunderstanding about what you are requesting and when the request was made. A request can be made by someone on behalf of a person with a disability.

- A reasonable accommodation or modification request can be made at any time. There must be a connection between the disability and the need for the accommodation or modification.

- You can ask for a reasonable accommodation when applying for housing, when moving in or moving out, while living in your unit, or even during an eviction hearing at the Magisterial District Court.

See **Writing Reasonable Accommodation or Modification Request Letters** on pages 15-17 for more information.

## Can Housing Providers Require Specific Forms for Reasonable Accommodation and Modification Requests?

Housing providers sometimes create standardized forms for requesting reasonable accommodations and modifications, however, they cannot require that you use a certain form to request a reasonable accommodation or modification. They cannot require that you make the request in a specific manner or at a specific time. Housing providers must consider your request even if you did not use their preferred form or procedure for making the request. They cannot deny your request just because you did not use their preferred form or procedure. It may be easier for you to cooperate with the housing provider and make the request using their form. However, if the form contains invasive questions or is burdensome then you have the right to dispute it.

## When Must a Housing Provider Allow a Reasonable Accommodation or Modification?

A housing provider must grant a request for a reasonable accommodation or modification if:

- The person making the request fits the Fair Housing Act definition of a person with a disability;

- Due to their disability, the person needs the accommodation or modification in order to use and enjoy their dwelling; and

- The request is "reasonable".

## What is Reasonable?

A request for an accommodation or modification is considered reasonable if that request:

- Does not cause an undue financial and administrative burden to the housing provider
- Does not cause a basic change in the nature of the housing program available
- Will not cause harm or damage to others
- Is technologically possible

A housing provider can deny a reasonable accommodation or modification request if the request is not reasonable.

**Example:** It would be unreasonable for a person with a disability to ask that their landlord assist them with their meals, unless the housing provider was already in the business of providing meal support (such as in an assisted living facility).

**Example:** If a person becomes disabled and can no longer access their 3rd floor apartment in a non-elevator building, it would be unreasonable (and probably architecturally impossible) to request the landlord allow the tenant to build an elevator. A more reasonable request would be to request a transfer to a first floor apartment. If that is not possible, the tenant could negotiate with the landlord for an early release from the lease.

## What Questions may a Housing Provider Ask a Prospective Tenant with Disabilities?

Housing providers may inquire into an applicant's ability to meet tenancy requirements. This means a landlord may ask whether you have sufficient income to be able to pay the rent, whether you are willing to comply with the building's rules, and other questions relating directly to tenancy. A housing provider may also adopt and apply uniform, objective and nondiscriminatory criteria designed to evaluate a prospective tenant's credit worthiness, such as requiring credit or criminal background



checks. A housing provider is permitted to ask if a person has been convicted of the distribution or manufacture of a controlled substance and whether a person is a current user of illegal controlled substances. Any questions asked by a housing provider must be asked to all applicants on an equal opportunity basis, without regard to race, color, religion, national origin, sex, familial status, disability, or age (over 40).

If the you are applying for a housing program that is designed for and occupied by persons with disabilities or with a particular type of disability, the housing provider may ask whether you qualify for this type of housing or if you qualify for a priority available to persons with disabilities or with a particular type of disability.

Request & Negotiation Process

11

## When can a Housing Provider Request Verification of Disability and Need for the Requested Accommodation or Modification?

If the person's disability is obvious and the need for the reasonable accommodation or modification is also obvious, the housing provider cannot ask for additional documentation (for example, a person with a visual impairment who uses a guide dog).

If the disability is obvious, but the need for the reasonable accommodation or modification is not clear, the housing provider is only allowed to request information to evaluate the disability related need (for example, a person who uses a wheelchair and who has an assistance dog to retrieve objects, open doors, etc.).

If neither the disability or the need for the accommodation are obvious, the housing provider may request documentation that the tenant has a disability and that the tenant has a disability related need for the reasonable accommodation or modification (for example, a person with a mental health diagnosis or post-traumatic stress disorder who has an emotional support animal).

**A housing provider may not ask:**

1. Questions about the nature or severity of a disability or a specific diagnosis.

2. If a person is able to live independently.

3. Questions that would require a person to waive their rights to confidentiality regarding their condition or history.

4. To see medical records.

## What if a Housing Provider Believes a Request is Unreasonable?

Each reasonable accommodation or modification request is very individual and each request must be determined on a case by case basis. **If the accommodation or modification proposed by a tenant is unreasonable, the housing provider must engage in an interactive dialogue with the tenant to determine if there is another solution or alternative accommodation that will meet the tenant's needs.**

A reasonable alternative accommodation may require negotiation between the tenant and the housing provider. If the alternative accommodation would effectively meet the disability related needs and is reasonable and does not pose an undue financial and administrative burden on the housing provider, the accommodation must be granted. The process of negotiating a reasonable accommodation or modification should be documented by both the tenant and the housing provider to protect their own interests should a dispute arise.

A housing provider may not stall or delay in responding to a request for reasonable accommodation. Court cases have established that a delay in the approval process can be considered a denial of an accommodation.

Request & Negotiation Process

# Reasonable Accommodation/Modification Request Evaluation "DANCE"

When evaluating a reasonable accommodation or modification request, the housing provider should assess the following to help determine the reasonableness of the request.

**D**isability – Does the tenant have a disability as defined by fair housing laws?
**A**ccommodation – Is the tenant requesting a change in the landlord's rules or practices?
**N**ecessary – Is the accommodation or modification necessary for full use and enjoyment?
**C**ost – Does the accommodation or modification impose an undue financial and administrative cost on the landlord?
**E**ffect – Would the accommodation or modification effect a fundamental change in the landlord's business?

If the answer to the first three questions is YES and the answer to the last two questions is NO, then the housing provider should grant the request.

# Can a Housing Provider Charge Extra Fees and Deposits or Require Conditions?

Housing providers cannot place financial conditions upon the granting of an accommodation or modification or require some action or condition before granting a reasonable accommodation request. For example, a housing provider cannot require a resident with a disability to purchase insurance to protect the landlord should someone be injured by a wheelchair ramp. Housing providers are not permitted to charge a fee for a reasonable accommodation and must forego collecting pet deposits or pet fees for assistance animals.

For reasonable modification requests, the housing provider may require that a plan or sketch be provided, that the work will be performed in a professional manner and that necessary building permits be obtained. A housing provider may not require a certain type of construction, a certain color, a certain contractor or even certain type of plan for a modification. If a housing provider would like a more expensive modification to meet any aesthetic concerns, the design must still meet the tenant's needs and the housing provider should pay for the additional costs. If the resident installing the modification is going to be the only one using it, than that resident is obligated to provide the upkeep of the modification. If the modification is in common use areas, then the housing provider is obligated to provide upkeep, including insurance, for the modification.

# What if a Housing Provider Believes a Person Would Pose a Direct Threat to Others or to Property?

The Fair Housing Act does not require that housing be made available to a person who would constitute a direct threat to the health or safety of others or who would constitute a risk of substantial physical damage to the property of others. The Fair Housing Act does not protect persons with disabilities whose tenancy would pose a "direct threat" to the health or safety of other individuals or result in substantial property damage unless the threat can be eliminated or significantly reduced by a reasonable accommodation.

If the tenant or prospective applicant refuses or is unable to comply with the tenancy rules that apply to all tenants, or if the tenancy would pose a direct physical threat to the health or safety of others, then the housing provider can reject that applicant or evict that tenant.

However, it is important to understand that the Fair Housing Act does not allow housing providers to deny housing opportunities to people with disabilities based on fear, speculation, or stereotypes about a particular disability or stereotypes about disabilities in general. To show that a tenancy would

Request & Negotiation Process

13

# WRITING REASONABLE ACCOMMODATION OR MODIFICATION VERIFICATION LETTERS

If a person's disability is not obvious or the need for the reasonable accommodation or modification is not clear, a housing provider may request verification from a medical professional (physician, mental or behavioral health professional, etc.). The medical professional does not need to be a physician but does need to be qualified to assess the disability and familiar with the person requesting the accommodation or modification.

A verification letter should be written by a qualified medical professional who is familiar with a person's disability, or who is qualified to diagnose or treat the person's disability. The letter should be written on professional letterhead and should:

1. Verify that the individual has a disability as defined by the Fair Housing Act. The actual diagnosis or the severity of the disability does not need to be disclosed.

2. Demonstrate a relationship between the person's disability and the need for the requested accommodation or modification (show how granting the request is necessary in order for the resident to be able to use and enjoy the premises on an equal basis).



## SAMPLE LETTER
## Reasonable Modification Request

Your Name
Your Address

Date
Landlord's Name
Landlord's Address

Dear {Enter Landlord's Name}:

I live at {enter address}. I (or a member of my household) am a person with a disability as defined by the Fair Housing Act. I am writing to request permission to make a reasonable modification under the federal Fair Housing Act.

POSSIBLE REQUEST 1: I am requesting permission to install a ramp at the entrance to my apartment.

POSSIBLE REQUEST 2: I am requesting permission to install grab bars in my bathroom.

POSSIBLE REQUEST 3: I am requesting permission to install visual smoke detectors in my apartment.

According to the Fair Housing Act Amendments (42 U.S.C. 3604) (f)(3)(A), and Pennsylvania state fair housing law, housing providers must allow tenants to make reasonable modifications as necessary to afford a person with a disability full enjoyment of the premises. Denying a reasonable modification request for a person with a disability is a violation of the Federal Fair Housing Act.

You can refer to the Joint Statement from the U.S. Department of Housing and Urban Development and the Department of Justice detailing the obligations of housing providers under the Fair Housing Act to make reasonable accommodations for persons with disabilities. You can access this Joint Statement by visiting equalhousing.org and clicking on the Landlord Resource Center. Please respond in writing to my request within ten days from the date of this letter. I look forward to your response and appreciate your attention to this critical matter.

Sincerely,

Your Signature
Print Your Name

Writing Request Letters

## SAMPLE LETTER
## Reasonable Accommodation Request

Your Name
Your Address

Date
Landlord's Name
Landlord's Address

Dear {Enter Landlord's Name}:

I live at {enter address}. I (or a member of my household) am a person with a disability as defined by the Fair Housing Act. I am writing to request a reasonable accommodation under the federal Fair Housing Act.

POSSIBLE REQUEST 1: I am requesting permission for an assistance animal to assist with daily living. I understand that our building's rules state a no-pet policy. However, I am requesting that you make a reasonable accommodation in the building's rules to permit an assistance animal in my apartment.

POSSIBLE REQUEST 2: I am requesting a reserved parking space closest to my unit. I understand parking is on a first come, first served basis, but due to my limited mobility, I am requesting a reserved parking space closest to my unit.

POSSIBLE REQUEST 3: I am requesting to pay my rent on the 6th of the month without being assessed a late fee. I receive my disability checks on the 5th of the month.

According to the Fair Housing Act Amendments Sec. 804 (42 U.S.C. 3604) (f)(3)(B), (3) For purposes of this subsection, discrimination includes—(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

You can refer to the Joint Statement from the U.S. Department of Housing and Urban Development and the Department of Justice detailing the obligations of housing providers under the Fair Housing Act to make reasonable accommodations for persons with disabilities. You can access this Joint Statement by visiting equalhousing.org and clicking on the Landlord Resource Center. Please respond in writing to my request within ten days from the date of this letter. I look forward to your response and appreciate your attention to this critical matter.

Sincerely,

Your Signature
Print Your Name

## SAMPLE VERIFICATION LETTER
(on professional letterhead)

Writing
Verification Letters



**Dr. Jane Doe**
General Practitioner
555-555-0123
jane.doe@doctoroffice.com

Date

Dear {Housing Provider},

{Name of client} is my patient/client and has been under my care since (date). I am familiar with his/her medical history and disability related functional limitations. He/she meets the definition of disability under the Fair Housing Act.

An {emotional support animal, reserved parking space, permission for an aide to move in, etc.} is necessary for my patient/client to (choose one or more of the following):

- alleviate disability related symptoms
- allow for continued health and stability
- improve physical, emotional, or psychological function
- provide mobility support
- provide essential services
- enable (name of client) to live more independently, etc.

I am available to answer questions you may have concerning {name of patient/client}'s request.

Sincerely,


Signature

Name of Professional

pose a direct threat, the housing provider must do an individualized assessment to determine if reliable objective evidence exists that shows there is current conduct or a recent history of disruptive or destructive behavior. The direct threat assessment must take into account the nature and severity of the risk of injury as well as the probability that an injury will occur and whether there are any reasonable accommodations that would eliminate the direct threat.

Case law has addressed that even in cases of tenants who do in fact present a "direct threat" due to their disabilities, these tenants are entitled to a determination whether any reasonable accommodation would mitigate any risk posed by their disability related behaviors prior to eviction. If an individual has received treatment or medication that has eliminated the direct threat, that should be taken into account and the housing provider can request that the individual document how circumstances have changed or how the individual no longer poses a direct threat. Denying an individual housing because of a direct threat must be based on reliable and objective evidence.

**Example**: A housing provider may not deny housing to a prospective tenant just because they know that individual has struggled with alcoholism. Rejecting someone solely based on a belief that people with alcoholism are dangerous and damage property would violate the Fair Housing Act. However, if the housing provider finds out through landlord references that the individual has caused property damage repeatedly in the recent past and there is no evidence to show that this threat has been mitigated in any way, then the housing provider can reject this applicant based on direct threat.

**Example:** A housing provider may not deny housing to a prospective tenant because they know that individual has a psychiatric diagnosis. If a tenant with a psychiatric disability stops taking their mediation and threatens another resident and the management has a policy of evicting residents who engage in violent or disruptive behavior, the tenant can request a reasonable accommodation to this policy if the tenant is able to show that treatment and medication monitoring will eliminate the direct threat. If the tenant is not willing to undergo medication monitoring and treatment or continues to pose a direct threat to the health and safety of other residents, then management can proceed with an eviction.

## Common Accommodation and Modification Mistakes by Housing Providers

- Always requiring forms and not accepting letters or verbal requests
- Being rigid or overly burdensome with rules, policies, and procedures
- Not responding to accommodation or modification requests in a timely manner
- Not engaging in an interactive process
- Not training all employees who deal with tenants/prospective tenants
- Charging fees or deposits such as a transfer fee or a pet deposit
- Conditioning an accommodation by requiring some action before it is granted
- Requiring medical documentation or completion of a particular form before considering an accommodation when the disability or the need for the accommodation is obvious
- Requesting information about the nature or severity of a requestor's disability
- Requiring an annual reapplication or recertification of a reasonable accommodation request

If your reasonable accommodation or modification request is denied and you believe the request was reasonable or the housing provider does not respond to your request or will not engage in a dialogue with you, you can file a formal complaint of discrimination with a state or federal enforcement agency or file a lawsuit in federal court. See **Filing a Far Housing Discrimination Complaint** for more information.

# WRITING REASONABLE ACCOMMODATION OR MODIFICATION REQUEST LETTERS

It is the responsibility of the tenant (or a representative of the tenant) to request an accommodation or modification. A landlord cannot be expected to predict or anticipate an individual's needs. Although not required by the Fair Housing Act, it is recommended that requests for reasonable accommodations or modifications be made in writing for proper documentation and include proof that the tenant has a covered disability and the need for an accommodation or modification.

Your letter should:

1. State where you live and who is responsible for the building.

2. Indicate that you qualify as a person with a disability as defined by the Fair Housing Act. It is not necessary to reveal the nature or severity of your disability.

3. Describe the policy, rule, or architectural barrier that is problematic to you.

4. Describe how this policy or barrier interferes with your needs, rights, or enjoyment of your housing.

5. In clear and concise language, describe the accommodation you are seeking for the policy, rule, or barrier.

6. Cite the applicable law that protects your rights.

   For accommodations use: Fair Housing Act Amendments Sec. 804 (42 U.S.C. 3604)(f)(3)(B)

   For modifications use: Fair Housing Act Amendments, Sec. 804 (42 U.S.C. 3604)(f)(3)(A)

9. Ask for a written response within a certain amount of time.

10. Sign and date the request. Remember to keep a copy of your request for your files.



# ASSISTANCE ANIMALS

Many people with disabilities require the use of assistance animals in their daily lives. Assistance animals for people with disabilities are not pets. Assistance animals are considered different than "pets" under the Fair Housing Act, as assistance animals have a specific role to assist a person with a disability in a way that is related to the disability itself.

> An assistance animal is any type of animal that provides a service to a person with a disability. Assistance animals are animals that do work, provide observation or vigilance, or perform tasks for the benefit of a person with a disability—including providing support or comfort for adults or children with mental or emotional disabilities. Emotional support animals alleviate one or more identified symptoms or effects of a person's disability. **See Note on page 21**

While it is permitted to restrict pets from rental properties or condominiums, it is unlawful to deny a person with a disability the right to possess an assistance animal, as long as the animal's function has a direct connection to the person's disability. Under the Fair Housing Act an assistance animal is not required to have formal training or certification and a housing provider is not allowed to require proof that the animal has been certified, trained, or licensed as a service animal. Policies limiting the size, weight, or type of pets allowed do not apply to assistance animals and assistance animals can be any type of therapeutically necessary animal. Guide dogs, seizure alert dogs, and post-traumatic stress disorder assistance dogs are commonly recognized, but many types of animals provide emotional support for individuals with mental and emotional health disorders.

A person with a disability can request a reasonable accommodation to a "no pets" policy. Additionally, pet fees and/or pet security deposits must be waived for assistance animals.

A landlord, property manager, condominium board or any other housing provider may request additional information or documentation to verify the need for an assistance animal if the requester has a disability that is not obvious, or the disability related need is not apparent.

A landlord, real estate agent, property manager, condominium board, or any other housing provider **cannot**:

- Deny a person with a disability the right to have an assistance animal when requested as a reasonable accommodation
- Deny occupancy or evict a person with a disability because he/she requests an assistance animal
- Charge extra fees (such as a monthly pet rent or a pet fee) for an assistance animal
- Stall or delay response to a request for an assistance animal
- Require mandatory training or certification for an assistance animal
- Inquire about the nature or severity of a person's disability

People who own assistance animals must assume all responsibility for the animal including making sure it is up to date on vaccinations, cleaning up after the animal, and making sure it does not disturb neighbors with excessive noise. Owners of assistance animals are exempt from pet fees and pet deposits, but they must nonetheless pay for any damages that the animal might cause. If an assistance animal is dangerous or disruptive to other residents, the housing provider can require its removal or evict the tenant.

Assistance Animals

> **Note:** The Fair Housing Act requirements concerning assistance animals differ from the standards required under the Americans with Disabilities Act (ADA), which covers public accommodations. The ADA has very strict and specific governing standards regarding service animals in places of public accommodation like restaurants, stores, and post offices. The Fair Housing Act applies to dwellings and has a broader definition of assistance animal. Under the Fair Housing Act, it does not matter whether an animal is a service animal, a therapy animal, or an emotional support animal. The animal does not need to be trained to perform a specific service. The important factor is that the assistance animal serves a disability related need and allows a person with a disability equal opportunity to use and enjoy a dwelling.

Assistance Animals

## Insurance Policy Restrictions on Dog Breeds and Animal Types

An accommodation is unreasonable if it imposes an undue financial or administrative burden on a housing provider. If a housing provider's insurance policy would terminate, substantially increase in cost, or the policy terms would be adversely affected because of the presence of a certain breed of dog or a certain type of animal, this could pose an undue financial or administrative burden on the housing provider. However, the housing provider may need to show that comparable insurance without the breed restriction is unavailable. If an insurance provider has a policy of refusing to insure any housing that has animals without an exception for assistance animals, that insurance provider may be held liable for discriminating against individuals with disabilities.

## Online Emotional Support Animal Registration

Consumers should be aware of the large number of online services that claim to certify a pet as an emotional support animal for a fee. No official certification or registration for emotional support animals or assistance animals currently exists. When making a reasonable accommodation request for an emotional support animal or any other type of assistance animal, all verifications provided to housing providers should come from a medical or other professional who is familiar with the patient or client making the request, their disability, and the disability related need for the animal.



## The Pennsylvania Assistance and Service Animal Integrity Act

Consumers should only request reasonable accommodations for assistance animals when there is a legitimate disability related need and should avoid misrepresenting a pet as an assistance animal. A number of states, including Pennsylvania, have passed laws which criminalize falsely representing a pet as an assistance animal.

The Assistance and Service Animal Integrity Act is a law that was enacted in Pennsylvania in 2018 and protects landlords or associations from being held liable for injuries caused by a person's assistance animal or service animal which the landlord has permitted on the property as a reasonable accommodation.

The Assistance and Service Animal Integrity Act also makes it a third degree misdemeanor to misrepresent an animal as an assistance or service animal, to intentionally create a document misrepresenting an animal as an assistance animal or service animal in housing, to provide a document to another falsely stating that an animal is an assistance animal or service animal for use in housing, or to fit an animal that is not an assistance animal or service animal with a harness, collar, vest, or sign that indicates the animal is an assistance animal for use in housing. A person who violates the Assistance and Service Animal Integrity Act can be charged with a summary offense and fined up to $1,000.

Assistance Animals



22

# REASONABLE ACCOMMODATIONS WHEN APPLYING FOR HOUSING

## Assisting with Application

If an individual has a disability that makes it difficult to fill out an application form, a reasonable accommodation request would be to ask for assistance from the housing provider in completing the form.

## Providing Application or Lease in Large Print

If a person's disability makes reading a lease application or lease difficult, a reasonable accommodation request would be to ask for the documents in large print or in an alternative digital format.

## Poor Credit Record, Rental History, or Negative References Due to Disability

In some cases, making an exception to a credit score requirement may be a reasonable accommodation if the negative credit can be shown to be directly due to the person's disability and the individual is able to demonstrate that they are otherwise financially qualified to rent.

A person may not have previous rental history due to a disability. A reasonable accommodation can be requested to ask the housing provider to consider references from a social worker or employer.

If the reason for a negative reference is based on disability related behavior, the individual can request a reasonable accommodation to disregard the negative reference or to consider mitigating circumstances. Similarly, if an individual has a criminal record due to conduct that resulted directly from a mental health disability or addiction, and can demonstrate that they have since received treatment or medication that has eliminated the behavior that led to the criminal conduct, the individual can request a reasonable accommodation to make an exception to the provider's ordinary criteria regarding criminal background.

**Example:** If a person becomes disabled and can no longer work due to their disability, that person may acquire a negative credit report for late or unpaid bills. Later, this individual may be granted Social Security Disability Income and is no longer reliant on employment for income. A reasonable accommodation to a policy of rejecting tenants with poor credit records can be requested if the applicant is able to show that the poor credit record was a direct result of the disability, that their ability to pay no longer depends on employment, and that loss of income to an inability to work is unlikely to reoccur.

Applying for Housing

23



## Co-signors or Alternative Income

If an individual with a disability is unable to qualify financially to obtain housing because of their disability (poor credit record, no credit record, insufficient income), and a co-signor is willing to sign the lease agreement, it would be a reasonable accommodation for the landlord to accept the application even if the landlord has a "no co-signer" policy. Housing providers who require paystubs as proof of income must make reasonable accommodations to their policy for individuals with disabilities who are unable to work due to their disabilities but still have sufficient income to qualify to rent.

## Waiver of In-Person Application

Some housing providers require applications to be made in person. This requirement should be waived for individuals with disabilities to whom it would impose a great hardship or who are unable because of their disability to come in person to apply. For example, a nursing home resident transitioning to private housing might require ambulance transport. A reasonable accommodation would be to permit application via video or phone conferencing. Signatures required on documents can be mailed or scanned and forwarded to the housing provider as necessary.

# REASONABLE ACCOMMODATIONS DURING TENANCY

## Reserved Parking

A reserved parking space is a common reasonable accommodation request for an individual who may have a mobility impairment or other disability which makes walking difficult. Even if parking is available on a first come, first served basis, an individual with a disability can request a reserved parking space to allow them equal opportunity to use and enjoy a dwelling.



The space requested may either be a van accessible handicapped parking space or just a general reserved parking space which is not handicapped accessible. It all depends on the needs of the person making the request.

Decisions about granting reserved parking spaces should be made on an individual basis. There may be some cost to installing a reserved parking space including painting lines, installing signage, enforcement, etc. These costs are borne by the housing provider, not the resident.

## Reasonable Accommodations for Individuals Who Engage in Hoarding

Hoarding involves acquiring and saving large numbers of objects resulting in living spaces that are so cluttered that they are difficult or dangerous to live in. Hoarding can sometimes create sanitary and fire hazards and other health and safety issues that jeopardize housing.

A compulsive hoarder meets the definition of a person with a disability under the Fair Housing Act and has a right to request a reasonable accommodation in an effort to preserve housing. Sanitary hazards, fire hazards, and health and safety issues should not be and cannot be permitted to remain but the person who is engaging in hoarding can request a reasonable accommodation to allow additional time to clean and dispose of excess clutter. For example, when a housing provider determines that hoarding is causing an unsafe condition and issues an eviction notice, the tenant can request a delay in the eviction process to allow time to clean the unit and come into compliance. If a deadline is given by which the unit must be clean and clutter free, the tenant can request an extension within reasonable limits to bring the unit into a safe, satisfactory condition.

## Late Rental Payments Without a Fee

Rent is typically due on the 1st day of the month. Some leases allow a grace period wherein rent can be paid without a late fee (such as within the first 5 days of the month). Late fees can be assessed when the rent is paid after the due date or the grace period, whatever is determined by the lease agreement. A tenant who has a disability and receives Social Security Disability Income (SSDI) may request a reasonable accommodation to be exempt from the late fee when the date they receive their SSDI payments make paying rent on time difficult or impossible. Courts have determined that this is a reasonable request. Receiving SSDI should be sufficient proof that a person has a disability, and if they can show that they don't receive their payments until after the due date or grace period,

that is sufficient proof of a disability related need for the accommodation. Individuals who previously requested later rental due dates and were denied may be able to claim reimbursement for late fees paid if they can show proof that the request was previously made and denied.

## Rental Payment Reminders

If an individual has a cognitive disability or poor memory, a reasonable accommodation request would be to ask the housing provider to call or to provide a monthly note to remind the tenant to make a rental payment before the due date.

## Including a Case Manager or other Professional Support Service on all Correspondence

If an individual has a disability which makes processing information, understanding communication, or remembering information difficult, it is helpful to request that all communication from the housing provider be made in writing and be copied to the individual's case manager or other professional support service.

## Transfer to a More Accessible Unit or Early Termination of Lease

A person with a disability may have a need to terminate a lease before the end of the lease term due to medical issues, an increase in the severity of a disability, or the need for a more accessible unit. A reasonable accommodation can be made to allow the transfer to a more accessible unit or community without having to pay transfer fees. In some cases, it may be reasonable for a housing provider to release a resident with a disability from any further obligations under a lease agreement if it becomes necessary for the resident to relocate due to a disability related need.

## Permitting a Home Health Aide or Live-in Personal Care Attendant



An individual with a disability may require a visiting home health aide or a live-in personal care attendant. The tenant can request a reasonable accommodation to permit the live-in personal care attendant without payment of extra rent or inclusion on the lease. A reasonable accommodation request could also be made to request a transfer from a one bedroom to a two bedroom unit to accommodate a live-in personal care attendant. A tenant can also request a waiver of any guest fee or parking fee for a live-in care attendant or home health care aide.

During Tenancy

## Multiple Chemical Sensitivities

If an individual has multiple chemical sensitivities, they can request a reasonable accommodation to be notified in advance of painting or chemical spraying, including for pest extermination and lawn care.

## Smoking

When smoking interferes with a person's ability to equally use and enjoy their dwelling (i.e. secondhand smoke affecting a person with a lung disease), there are a couple of possible options. A person with the disability can request a reasonable accommodation to prohibit smoking in common use areas. A reasonable modification request can also be made to install air filters or an exhaust fan in the rental unit. If an acceptable solution cannot be reached to prevent secondhand smoke from having a negative effect on an individual with a disability, a reasonable accommodation can be requested for a transfer to another unit or building or for an early termination of the lease.



## Wheelchairs and Electric Scooters

Housing providers cannot deny someone the right to use a wheelchair or scooter or refuse someone housing because they use a scooter or wheelchair. Requiring additional deposits, liability insurance, or mandatory training for the wheelchair or scooter user is unlawful. Unreasonable community rules and policies which limit the wheelchair or scooter user equal opportunity to use and enjoy a dwelling are unlawful. Individuals who use wheelchairs, scooters, or other mobility aides are responsible for any damages beyond normal wear and tear which are caused by their mobility aide.

## Apartment Damages

If a person's disability caused them to damage an apartment unit, thereby violating the lease, a reasonable accommodation request can be made that the housing provider postpone eviction proceedings while the tenant undergoes treatment and counseling. As with any reasonable accommodation request, each case is decided on a case by case basis and would have to take into account the extent of the damages caused, if any other tenants were disrupted by the behavior, and if steps will be taken to repair any damages caused by the tenant.

During Tenancy



## Notice Before Entering Apartment

An individual may have a disability such as post-traumatic stress disorder which causes extreme anxiety when management enters the apartment for service calls or regular maintenance and inspections. A reasonable accommodation request would be to ask for 24-hour advance notice in a non-emergency, providing the tenant with a window of time to expect the visit. The tenant can also request that maintenance personnel do not simply knock and enter but that they knock and wait several minutes for the tenant to open the door.

## Noise Violations

At times a person's disability may cause noise violations. An example would be the presence of a child with disabilities who occasionally screams or makes loud noises. This can lead to complaints from neighbors about noise or even an eviction notice. Attempts should be made to mitigate any noise which is disturbing neighbors. If an eviction notice has been issued, a reasonable accommodation request can be made asking for a second chance to mitigate any noise disturbances. Sound proofing could be installed by the tenant (a reasonable modification request), behavioral therapy can be commenced or increased, and any number of intervening tactics could be employed to help mitigate any ongoing noise disruptions. If the noise disturbances continue unabated, the accommodation may no longer be reasonable.

## Eviction

If a non-renewal of lease, notice to quit, or eviction is issued because of a tenant's behavior, which was directly related to a disability, the tenant can request a reasonable accommodation to rescind a notice to quit or eviction notice or to reconsider a decision to not renew a lease and to consider mitigating circumstances. It is helpful if a case manager or other support services professional can write a letter explaining mitigating circumstances as well as steps that will be taken to ensure that the behavior does not recur (medication, therapy, counseling, supervision, etc.).

During Tenancy

# COMPETING DISABILITY NEEDS





Sometimes a reasonable accommodation request from a person with a disability can potentially have an impact on other tenants with disabilities. For example, a request for an assistance animal may negatively affect another tenant with a severe allergy to animals. In these cases, the housing provider must weigh the needs of both tenants with disabilities to try to come up with a mutually agreeable solution. It is important in this situation to apply the same process for engagement in an interactive negotiation and requiring appropriate verifications from both tenants.

Competing Disability Needs

29

# STIPULATIONS FOR REASONABLE MODIFICATIONS AND MODIFICATION REVERSALS

Housing providers can require that the work necessary to make an accessibility modification be done in a professional manner and that all necessary building permits are obtained. They cannot require that certain contractors be used. A housing provider can require that the tenant restore any interior modifications to the original condition upon moving out of the unit but only if the modification will interfere with the next tenant's use and enjoyment of the premises. For exterior modifications, restoration or structural changes are generally not required. If the modification is in a common use area and could benefit future tenants, the housing provider cannot require that the tenant restore the dwelling to its original condition upon moving out of the unit.

A Homeowners or Condo Association (HOA or COA) may **never** require restoration and reversal of a reasonable modification. In addition, HOAs and COAs are not permitted to require a certain type of construction, certain colors, or even a certain type of a plan for modification.

**Example:** If a tenant has a ramp to the laundry room built in a multi-unit apartment complex, the ramp does not need to be removed because it is located in a common use area and may be beneficial to future tenants.

**Example:** If cabinets in a tenant's kitchen are moved lower to provide access to a wheelchair user, the cabinets may have to be returned to their original height if the landlord believes it will interfere with the next tenant's use and enjoyment of the premises.

If you are going to make modifications to your rental unit, encourage your landlord to allow the modifications to stay when you eventually vacate the dwelling. Dwellings with accessible features can be high in demand and you can appeal to your landlord that the modifications will make the property more marketable. If you need to invest in extensive modifications to a rental unit, you may also want to negotiate a longer lease with the landlord.

## Escrow for Reversal of Reasonable Modifications in Rental Properties

If restorations to the dwelling will be necessary when a tenant moves out, a housing provider may request payment by the tenant into an interest-bearing escrow account. Such payments may be made over a reasonable period and the amount must be reasonable and cannot exceed the cost of the restorations. The interest from the account accrues to the benefit of the tenant.

# ACCESSIBILITY AND NEW CONSTRUCTION UNDER THE FAIR HOUSING ACT

All "covered multifamily dwellings" designed and constructed for first occupancy after March 13, 1991, are required by the Fair Housing Act to be readily accessible to and usable by persons with disabilities regardless of whether a property is privately funded or is publicly funded. Covered multifamily dwellings include many different types of residential dwellings and facilities such as condos, apartment buildings, assisted living facilities, nursing homes, public housing, transitional housing, shelters, and dorms. In buildings with four or more dwelling units and at least one elevator, all dwelling units and all public and common use areas must comply with the Fair Housing Act's design and construction requirements. In buildings with four or more dwelling units and no elevator, all ground floor units and public and common use areas must comply with the design and construction requirements under the Fair Housing Act.

To comply with the accessibility requirements of the Fair Housing Act, the housing must include the following features:

- An accessible building entrance on an accessible route
- Accessible public and common-use areas
- Doors that allow passage by a person in a wheelchair
- Accessible route into and through the dwelling unit
- Light switches, thermostats and other environmental controls in accessible locations
- Reinforcements in bathroom walls for later installation of grab bars
- Kitchens and bathrooms that allow a wheelchair to maneuver about the space

## Reasonable Modification in New Construction of Single Family Homes

Design and construction requirements under the Fair Housing Act only apply to some types of multifamily units. If an individual is purchasing a pre-construction single family home or townhouse and wishes to have it built with accessibility features such as a ramp, grab bars, or accessible kitchen, the builder must permit changes to the plans for accessibility even if they do not normally allow customization of building plans. The builder may only charge the buyer the difference between the cost of the modifications and the cost of the features that would have normally been provided.



Accessibility & New Construction

# DISABILITY RIGHTS IN FEDERALLY SUBSIDIZED HOUSING AND IN PUBLIC ACCOMMODATIONS

In addition to complying with federal, state, and local anti-discrimination laws, housing programs funded by the U.S. Department of Housing and Urban Development (HUD) must comply with additional rules, which further protect program participants from discrimination. Programs that may not be required to comply with the Fair Housing Act (for example, emergency one-night shelters) are still covered by other laws, such as Section 504 or the ADA, which require non-discrimination, accessibility standards, and reasonable accommodations and modifications for persons with disabilities.

The **Americans with Disabilities Act** (ADA) of 1990 is a broad civil rights law guaranteeing equal opportunity for individuals with disabilities in employment, public accommodations, transportation, state and local government services and telecommunications. The ADA prohibits discrimination based on disability in programs and activities provided by public entities (including housing related programs) and in goods, services, facilities, and privileges of places of public accommodation owned or operated by private entities. Public Housing agencies are covered by the ADA as are community development agencies, housing developed by state and local government including state university dormitories. Public and common use areas which are open to the general public or residents of a development are covered by the ADA. Rental offices are covered by the ADA and must be accessible. Community rooms are covered by the ADA if they are made available to the public.

The provisions of the Americans with Disabilities Act regarding public accommodations and state and local government services is enforced by the U.S. Department of Justice. For more information on the ADA, please go to the U.S. Department of Justice's ADA website page at www.ada.gov or contact your regional ADA Center adata.org/find-your-region.

The **Architectural Barriers Act** (ABA) states that all buildings, other than privately owned residential facilities, constructed by, on behalf of, leased by the federal government, or buildings financed in whole or in part with federal funds must be physically accessible for persons with disabilities. Public housing must meet the accessibility standards set forth by the Architectural Barriers Act. The U.S. Department of Housing and Urban Development oversees enforcement of the ABA in public housing.

**Section 504 of the Rehabilitation Act of 1973** (Section 504) states that no otherwise qualified individual with a disability may be discriminated against in any program or activity receiving federal financial assistance including subsidized housing. Housing and housing programs receiving federal financial assistance must comply with Section 504. While public housing and the administration of the Section 8 housing voucher program is covered by Section 504, private landlords who accept Section 8 housing vouchers are not covered by Section 504.

Section 504 Requirements:

- Individuals with disabilities cannot be denied participation in any program or activity because of their disability. There must be sufficient accessibility so that individuals with disabilities have an equal opportunity to participate in and benefit from a program.

- Individuals with disabilities cannot be made to accept lesser service or a different kind of service than that which is provided to others without disabilities.

Federally Subsidized Housing & Public Accommodations

32

- Individuals with disabilities may not be required to participate in separate activities and programs which may be available to people with disabilities.
- Programs and services must make sure their services and programs are readily accessible to and usable by persons with disabilities to the maximum extent feasible.
- Programs and services must be conducted in the most integrated setting appropriate for the person with the disability.
- Housing for individuals with disabilities cannot be separate or unnecessarily segregated from housing provided to individuals without disabilities.
- Accessible housing units must be made available to qualified individuals with disabilities who require accessible features before being offered to families who do not have an individual with a disability requiring accessible features.
- Communication must be accessible to persons with disabilities and auxiliary aides and services must be provided including interpreters, transcription or captioning services with the participation in any program activity. Electronic materials and websites must be accessible and print materials must be provided in large print or Braille or other alternative format.
- Federally funded new construction projects must ensure that 5% of the dwelling units, or at least one unit, whichever is greater, are accessible for persons with mobility impairments. An additional 2% of dwelling units, or at least one unit, whichever is greater, must be accessible for persons with hearing or visual disabilities.

For more information on Section 504, visit HUD's Section 504 webpage at https://www.hud.gov/program_offices/fair_housing_equal_opp/disabilities/sect504faq



Federally Subsidized Housing & Public Accommodations

33

# REASONABLE ACCOMMODATIONS IN FEDERALLY FUNDED HOUSING

As in private housing, a reasonable accommodation in subsidized housing can be requested at any time. Specific procedures or forms cannot be required. The housing provider must respond in a timely manner.

## Physical Modifications

A significant difference exists in the provision of reasonable modifications in subsidized housing as opposed to private housing. In private housing, physical modifications to a rental unit are called reasonable modifications and are paid for by the tenant. In subsidized housing (excluding private landlords accepting Section 8 housing vouchers) physical modifications are called reasonable accommodations and the housing provider is responsible for the cost of installation. For example, in a federally subsidized housing program, the housing provider would pay for the installation of a wheelchair ramp, grab bars, or other modification for a resident with a disability.

## Housing Voucher Extension

If finding suitable housing is made more difficult because of a person's disability or disability related needs, a reasonable accommodation request can be made to grant additional time in the search for housing.

## Payment Standards

When a person with a disability has difficulty locating housing which has accessible features which meet their disability related needs within the price range of the housing voucher, a reasonable accommodation request can be made to increase the housing voucher to allow the person with the disability to obtain housing with the necessary accessible features.



Federally Funded Housing

34



## Alternative Housing Types

If a person's disability necessitates the utilization of an alternative form of housing not typically covered by a housing voucher, the individual can request a reasonable accommodation to be granted permission to be able to use their housing voucher with the alternative housing. Examples of alternative housing options include renting from a relative, shared housing, manufactured housing or mobile homes, or other typically ineligible housing types.

## Housing Size

When a person's disability requires extra space, including the use of medical equipment or a bedroom for a 24 hour live-in personal care attendant, a reasonable accommodation request can be made to request a larger housing unit or voucher. Another example of a reasonable accommodation would be granting an additional bedroom because a child's disability related behaviors makes it impossible to share a bedroom with a sibling.

## Housing Inspection

If a person misses a required housing inspection because of their disability (cognitive impairment, memory problems, hospitalization, etc.) a reasonable accommodation request can be made to ask for the housing inspection to be rescheduled.

Federally Funded Housing

35

# FILING A FAIR HOUSING DISCRIMINATION COMPLAINT

Filing a Complaint

**If you believe you have experienced housing discrimination, including the denial of a reasonable accommodation or modification request, it is important to maintain records and documentation to help prove your case. Be sure to include:**

- **Names**
- **Dates**
- **Details regarding the incident.**

Fair housing complaints can be filed with the U.S. Department of Housing and Urban Development for up to one year from the incident or with the Pennsylvania Human Relations Commission for up to 180 days from the incident. In addition, a lawsuit can be filed in federal court for up to two years.

If a landlord is found to have discriminated, the victims of housing discrimination can be awarded out-of-pocket costs incurred while obtaining alternative housing and any additional costs. Non-economic damages for humiliation, mental anguish, or other psychological injuries may also be recovered.

## Housing Equality Center of Pennsylvania

If you live in the City of Philadelphia or in Bucks, Chester, Delaware, Lehigh, Montgomery, or Northampton Counties in Pennsylvania, you can call the Housing Equality Center of Pennsylvania for counseling, investigation, and options for enforcement based on the circumstances of your case.

Phone: 267-419-8918
Toll-Free: 866-540-FAIR (3247)
info@equalhousing.org
equalhousing.org

## U.S. Department of Housing and Urban Development

To file a complaint with the U.S. Department of Housing and Urban Development:

**Call HUD's Housing Discrimination Hotline at 800-669-9777 or visit www.hud.gov**

## Pennsylvania Human Relations Commission

To file a complaint with the Pennsylvania Human Relations Commission:

**Call 215-560-2496 or visit www.phrc.pa.gov**

# ADDITIONAL RESOURCES

## For More Information on Reasonable Accommodations and Modifications

The U.S. Department of Justice and the U.S. Department of Housing and Urban Development have provided joint statements on **Reasonable Accommodations Under the Fair Housing Act** and **Reasonable Modifications Under the Fair Housing Act.**

These statements offer a clear Q&A format providing technical guidance on rights and obligations of persons with disabilities and housing providers under the Fair Housing Act.

You can access this Joint Statement by visiting equalhousing.org  and clicking on the Landlord Resource Center.

**Housing Equality Center of Pennsylvania** is a nonprofit organization leading the effort to eliminate housing discrimination in Pennsylvania through education, advocacy and enforcement of fair housing laws. We provide victims of discrimination with legal help, perform testing to determine the existence of discrimination, educate the public, consult with and train housing providers, and work with housing and related service providers to ensure compliance with anti-discrimination laws. The Housing Equality Center provides fair housing counseling, testing, and investigations services for victims of discrimination in Bucks, Chester, Delaware, Lehigh, Montgomery, Northampton and Philadelphia Counties in Pennsylvania.

Phone: 267-419-8918
Toll-Free: 866-540-FAIR (3247)
info@equalhousing.org
equalhousing.org

## Funding Accessibility Modifications

If you do not have the money to pay for a reasonable modification, there are some resources you can contact who may be able to help you.

### Pennsylvania Assistive Technology Foundation (PATF)

Pennsylvania Assistive Technology Foundation (PATF) can help people with disabilities and older Pennsylvanians get the assistive technology they need with the following programs:

- Low-interest and 0% interest financial loans
- Information and assistance about possible funding resources

PATF also provides financial education through various publications and individual counseling. The PA Assistive Technology Foundation can be reached at:

Phone: 484-674-0506
Toll-Free: 888-744-1938
Fax: 484-674-0510
patf.us

Additional Resources

**Additional Resources**

## Pennsylvania Accessible Housing Program (PAHP)

Pennsylvania Accessible Housing Program (PAHP) provides grants that will enable low and moderate-income persons with permanent disabilities and older adults to make their current home more accessible.

In most counties this program is provided by **Self Determination Housing Project (SDHP):** www.sdhp.org/modifications/pa-accessible-housing-program/

## Self Determination Housing Project (SDHP) of Pennsylvania

The Self-Determination Housing Project (SDHP) of Pennsylvania is a statewide non-profit organization that works to expand housing options for people with disabilities in Pennsylvania. SDHP administers several statewide and/or county-wide housing programs including the Regional Housing Coordinator Program and the PA Accessible Housing Program.

261 Old York Rd, Suite 321A
Jenkintown, PA 19046
Phone: 610-873-9595
Toll-Free: 877-550-7347
Fax: 610-873-9597
www.sdhp.org

## Veterans Affairs has programs available to help disabled veterans to make modifications to their homes.

| **Office of Veterans Affairs (OVA)** | **Philadelphia Field Office** | **Pittsburgh Field Office** |
|---|---|---|
| Bldg. 0-47, Fort Indiantown Gap Annville, PA 17003-5002 Phone: 717-861-8910 Toll-Free: 800-547-2838 Fax: 717-861-8589 RA-VA-Info@pa.gov | Veterans Administration Center P.O. Box 42938 Philadelphia, PA 19101-2938 Phone: 215-381-3040 Toll-Free: 866-754-8637 Fax: 215-381-3492 | William S. Moorhead Federal Building 1000 Liberty Ave., Suite 1612 Pittsburgh, PA 15222-4003 Phone: 412-395-6225 Toll-Free: 866-754-8636 Fax: 412-395-6224 |

# Other Resources

## PALawHELP

For information regarding legal issues including landlord/tenant, consumer, children and families, employment, health law, housing and shelter, public benefits, disability, elder law, immigration issues, migrant issues, and veterans and military, please visit the website www.PALawHELP.org.

## Senior LAW Center

Senior LAW Center serves Pennsylvanians 60 years of age and older. Legal advice, counseling, information, and referral services are available at 877-PASRLAW (727-7529) or www.seniorlawcenter.org.

## Disability Rights PA

Disability Rights PA protects and advocates for the rights of people with disabilities so that they may live the lives they choose, free from abuse, neglect, discrimination, and segregation. Visit the website www.disabilityrightspa.org, email intake@disabilityrightspa.org or contact the office closest to you:

**Harrisburg Office**
301 Chestnut Street Suite 300
Harrisburg, PA 17101
Phone: 717-236-8110
Toll-Free: 800-692-7443
TDD: 877-375-7139
Fax: 717-236-0192
drnpa-hbg@drnpa.org

**Philadelphia Office**
The Philadelphia Building
1315 Walnut Street, Suite 500
Philadelphia, PA 19107-4798
Phone: 215-238-8070
Fax: 215-772-3126
drnpa-phila@drnpa.org

**Pittsburgh Office**
429 Fourth Avenue, Suite 701
Pittsburgh, PA 15219-1505
Phone: 412-391-5225
Fax: 412-467-8940
drnpa-pgh@drnpa.org

## Pennsylvania LINK to Aging and Disability Resources

Aging and Disability Resource Centers (ADRC) are a nationwide effort to assist older adults and individuals with disabilities who need help with activities of daily living. The ADRC in Pennsylvania is known as the Link. The PA Link can connect you to local services through any LINK partner agency; help you explore existing options to ensure a secure plan for independence; assist you with applications to determine eligibility; and help you remain in, or return to, your community. Call the toll-free HELPLINE at 800-753-8827.



Additional Resources

## The PA Bar Association Lawyer Referral Service

The PA Bar Association Lawyer Referral Service (LRS) refers callers to lawyers in the counties that do not have a referral service of their own. This service covers 45 of the 67 counties in the Commonwealth of Pennsylvania, and can be reached by calling 800-692-7375 (for in-state callers only), 717-238-6807 or www.pabar.org.

If you are looking for an attorney in a county listed below, please contact that County's bar association's **Lawyer Referral Service** directly.

Allegheny County, Pittsburgh:
412-261-5555

Beaver County, Beaver:
724-728-4888

Berks County, Reading:
610-375-4591

Blair County, Hollidaysburg:
814-693-3090

Bucks County, Doylestown:
215-348-9413
888-991-9922

Butler County, Butler:
724-841-0130

Carbon County, Lehighton:
610-379-4950

Chester County, West Chester:
610-429-1500

Cumberland County, Carlisle:
717-249-3166

Dauphin County, Harrisburg:
717-232-7536

Delaware County, Media:
610-566-6625

Erie County, Erie:
814-459-4411

Franklin County, Chambersburg:
717-267-2032

Lackawanna County, Scranton:
570-969-9600

Lancaster County, Lancaster:
717-393-0737

Lebanon County, Lebanon:
717-273-3113

Lehigh County, Allentown:
610-433-7094

Luzerne County, Wilkes-Barre:
570-822-6029

Mercer County, Mercer:
724-342-3111

Monroe County, Stroudsburg:
570-424-7288

Montgomery County, Norristown:
610-279-9660

Northampton County, Easton:
610-258-6333

Philadelphia County, Philadelphia:
215-238-6333

Washington County, Washington:
724-225-6710

Westmoreland County, Greensburg:
724-834-8490

York County, York
717-854-8755

If you think you may qualify for free legal assistance, the Legal Aid office near you can be located by going to www.palegalaid.net and clicking on Service/Staff Locator, and then on your county in Pennsylvania. Or you can call 717-236-9486 and follow the prompts to hear the contact information for the Legal Aid office in your county. If you do not qualify for legal aid or if the Legal Aid office you contact cannot help you for any reason, please check out www.PALawHELP.org to see what additional legal resources and information are available to you.

Additional Resources

## PA Housing Search

The Pennsylvania Housing Finance Agency's search tool helps people search for housing by topics such as rent amount, area of interest, accessibility, or availability of public transportation. On the website, you can also find additional statewide information and resources, including a rental checklist, rent calculator, information on services, transportation, Frequently Asked Questions related to renting, and much more by visiting the "Info and Links" section of the website www.pahousingsearch.com. Or call toll-free 877-428-8844, TTY is 7-1-1.

## Public Benefits

To see if you are eligible for public benefits, such as LIHEAP (Energy Assistance), Food Stamps, Medical Assistance, CHIP, Cash Assistance, Child Care Works Program, School Meals, Long Term Living Services, and Early Intervention, Intellectual Disability or Autism Services, visit www.compass.state.pa.us.
If you need help filling out your COMPASS application, call the HELPLINE at 800-692-7462 between 8:30 a.m. and 4:45 p.m., Monday through Friday.

If you are hearing impaired, call TTY/TTD at 800-451-5886. If you have a question during nonbusiness hours or prefer to use e-mail, you may contact them by email through their website.

## 2-1-1 United Way

PA 2-1-1 is a free resource and information hub that can connect you with customized health, housing, and human services information. By calling 2-1-1, you can receive information related to food, housing, employment, health care, along with a variety of other services. Visit the website at www.pa211.org or dial 2-1-1.

## Public Housing Authorities

If you need public housing assistance or information about public housing programs, such as Housing Choice Vouchers (HCVs), please contact your local public housing authority (PHA). The HCV program is the federal government's major program that assists very low-income families, older adults, and individuals with disabilities with obtaining decent, safe, and sanitary housing in the private housing market. If you need assistance locating your local public housing authority, call 2-1-1 (United Way) for information.

## Quick Start Housing Resources

Use the website www.phfa.org/mhp/serviceprovider to find the contact information, by county, for a variety of housing providers including housing authorities, homeless providers, community action agencies, and more. Click on the "Hot Topics" button to see a drop down menu of counties in Pennsylvania and select your county to view.

*Funding under a grant from the U.S. Department of Housing and Urban Development supported the work that provided the basis for this publication. The substance and findings of the work are dedicated solely to the public. The author and publisher are solely responsible for the accuracy of the statements and interpretations contained in this publication. Such interpretations do not necessarily reflect the views of the Federal Government.*

Additional Resources



Bernard Kleina



HOUSING
EQUALITY
CENTER
of Pennsylvania